**CANADIAN UNIVERSAL INSURANCE COMPANY, LTD., Respondent,**

v.

**FIRE WATCH, INC., et al., Appellants,**

**Lockerby Sheet Metal & Roofing Company, et al., Defendants.**

**No. 46725.**

Supreme Court of Minnesota.

Sept. 2, 1977.

Rehearing Denied Oct. 13, 1977.

---

Primus, Primus & Primus and Richard Primus, Minneapolis, for appellants.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and Donald Chance Mark, Jr., and Clarence A. Anderson, Minneapolis, for respondent.

Heard before TODD, YETKA, and STAHLER, JJ., and considered and decided by the court en banc.

TODD, Justice.

Fire Watch, Inc., is engaged in the business of selling, distributing, and servicing fire protection equipment. It purchased an insurance policy to cover completed operations and products liability from Canadian Universal Insurance Company, Ltd. (Canadian). A fire occurred at a building in which Fire Watch had installed equipment. Due to the failure of its equipment to function, an action for damages was commenced against Fire Watch which, in turn, tendered the defense of the action to its insurer. Canadian brought an action for a declaratory judgment that the loss in question was excluded from coverage under the insurance policy. The trial court determined that the policy and an endorsement thereto were unambiguous and excluded coverage. We reverse.

Fire Watch installed an automatic fire extinguisher system in a Mr. Quick restaurant in Faribault, Minnesota. On July 4, 1973, a fire originating from a source other than the fire protection equipment occurred at the restaurant. The failure of the fire protection system to function and thereby extinguish the fire caused extensive damage to the physical plant of the restaurant.

Thereafter, the owner and operator of the restaurant commenced an action for damages against Fire Watch alleging that (1) it negligently installed the fire protection system; (2) it negligently inspected the

system; and (3) it failed to provide adequate instructions concerning the operation of the system. Fire Watch tendered the defense of the action to its insurer. Canadian conditionally agreed to defend Fire Watch in the lawsuit but at the same time brought an action for a declaratory judgment that the particular loss suffered in the present case was excluded from coverage by the terms of the insurance policy.

Canadian then made a motion for summary judgment. Although the trial court determined the language of the insurance policy and its endorsements were unambiguous, the motion for summary judgment was denied because the court was of the opinion that a genuine issue of fact remained concerning the exact cause of the fire. In a memorandum accompanying its decision, the trial court confined its analysis of the insurance policy to an endorsement and interpreted the language employed therein as only providing coverage when the fire extinguisher system itself would cause a fire:

> "It would appear therefore that the only circumstances when the endorsement allows coverage for a failure of the product or work to perform the intended function is if there is, 'active malfunction of the named insured's product or work which serves to cause the fire.' Query: Just what was the cause of the fire? In the Court's opinion herein lies the crux of Plaintiff's liability, if any. Without a trial and testimony, the Court does not see how this question can be answered by it."

After the denial of its initial motion, Canadian brought a second motion for summary judgment. Accompanying the motion was an affidavit which included the pertinent portions of a deposition of the only known eyewitness to the fire. The general content of the eyewitness' testimony was that the fire originated in the "deep fat fry" area of the restaurant and not in the fire extinguisher system. After oral argument and after reviewing the materials accompanying the motion, the trial court granted Canadian summary judgment. Fire Watch appeals to this court from the judgment of the district court.

The issues which must be considered on appeal are:

(1) Whether the exclusionary language of the endorsement to the original insurance policy precludes coverage for Fire Watch in this instance.

(2) Whether an insurer has an affirmative obligation to notify the insured party that the insurance coverage provided by the policy is being reduced or modified by a subsequent endorsement to the policy.

 The provisions of an insurance policy are to be interpreted according to plain, ordinary sense so as to effectuate the intention of the parties. The policy should be construed as a whole with all doubts concerning the meaning of language employed to be resolved in favor of the insured. *Bobich v. Oja,* 258 Minn. 287, 104 N.W.2d 19 (1960). The terms of an insurance policy should be construed according to what a reasonable person in the position of the insured would have understood the words to mean rather than what the insurer intended the language to mean. *Petronzio v. Brayda,* 138 N.J.Super. 70, 350 A.2d 256 (1975); *McPhee v. American Motorists Ins. Co.,* 57 Wis.2d 669, 205 N.W.2d 152 (1973).

With these general principles in mind, initial reference must be made to the insurance contract entered into by the parties in this case. The coverage provided Fire Watch in the insurance policy issued by Canadian is entitled "Completed Operations and Products Liability Insurance." Consistent with this designation, the following general description of the coverage to be provided Fire Watch is given within the body of the policy under the heading of "Completed Operations": "Sales and installation of automatic safety first systems rated as: Completed Operations—N.O.C."[1] By confining the examination of the policy

---

1. For purposes of this opinion, we are assuming that "N.O.C." means "not otherwise covered."

to this general language, it would be entirely reasonable for an insured party to assume that coverage would be afforded for damages resulting from the negligent installation of a fire extinguisher system.

However, the policy also included a section which specified certain events or risks that would not be protected by insurance coverage. Specifically, the policy included an exclusionary clause commonly referred to as a "business risk exclusion"[2] which provides as follows:

"This insurance does not apply:

\* \* \* \* \* \*

"(e) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work."

A short time after the receipt of the original policy, Canadian forwarded the following endorsement, which was intended to replace the business exclusion clause, to Fire Watch:

"In consideration of the premium charged it is mutually agreed and understood that such coverage as is afforded by the policy shall not apply to \* \* \* Physical Injury to tangible property, including the loss of use of such physically injured property resulting from fire because of the failure of the named insured's product or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, regardless of whether such failure is due to a production (employee) error or attributable to a design (management) error; but this exclusion is

not intended to apply to \* \* \* physically injured property resulting from fire because of the active malfunction of the named insured's product or work which serves to cause the fire."

Richard A. Neumann, president of Fire Watch, had several conversations with Canadian's agent in an attempt to ascertain the meaning and purpose of the endorsement. Finally, he signed the endorsement as follows:

"This endorsement accepted by the Insured on 4–23–73

"Insured /s/ Richard Neumann, President

"See attached letter 4–23–73"

In the letter referred to by Mr. Neumann, it is obvious that although he accepted the endorsement he still was uncertain about the coverage afforded Fire Watch under the policy endorsement. Thus, Neumann attempted to clear up any confusion existing over coverage under the policy by including his own interpretation of the language of the endorsement in the letter to Canadian:

"The exclusion to me means as follows:

"The coverage doesn't apply to bodily injury or physical injury to tangible property including loss of business resulting from a fire when a product manufactured for the intended purpose doesn't perform; this includes either a production or design error by the manufacture[r]. This coverage is provided by the manufacture[r] and is extended to protect Fire Watch by supplying a broad form vendors endorsement."

The endorsement and letter including Fire Watch's interpretation of the endorsement were forwarded to Canadian. The insurance company did not respond to the correspondence from Fire Watch, although it is quite obvious from the letter and the manner in which the endorsement was accepted that the insured party was indeed puzzled about its insurance coverage.

---

**2.** See, Henderson, *Insurance Protection for Products Liability and Completed Operations— What Every Lawyer Should Know*, 50 Neb.L. Rev. 415, 438, for a discussion of the origin and nature of this clause.

The trial court decision granting Canadian summary judgment was premised entirely upon the language of the policy endorsement. The particular language of the endorsement which specifically applies to the present case states, in part, that the policy would not provide coverage for "failure of the named insured's product or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, regardless of whether such failure is due to a production (employee) error or attributable to a design (management) error * * * ." We are in agreement with the trial court decision that this language clearly precludes insurance coverage in the present case. However, for reasons stated hereinafter, we believe that the trial court, in relying solely upon the language of the endorsement to deny coverage, took an unduly restricted view of the issue presented.

It must be remembered that the endorsement forwarded by Canadian to Fire Watch was intended to replace the business risk exclusion. Comparison of the two exclusionary provisions is in order. The parameters of insurance coverage delineated by the initial phrase of the exclusionary clause in the original policy are similar to the initial phrase of the endorsement, except that the endorsement provides that it does not cover any loss occasioned by fire. The important distinction between the original policy and the endorsement is located in the modifying phrase which immediately follows the initial exclusionary statement. The language of the endorsement expands the exclusion from coverage through the use of the word "regardless." In contrast, the exclusion in the original policy was limited to certain events by use of the word "if" after the initial statement. Thus, the business risk exclusion would only preclude coverage "if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured." The endorsement, however, would deny coverage "regardless of whether such failure is due to a production (employee) error or attributable to a design (management) error * * * ."

It is relatively clear that the language of the business risk exclusion provides coverage for losses arising from the negligent installation of a fire protection system since it is not enumerated as an excluded risk after the qualifying word "if." However, the language of the endorsement would deny coverage for both negligent installation and manufacturing and, in so doing, substantially reduces the insurance coverage afforded Fire Watch under the policy. Thus, we conclude that under the policy as originally issued, Fire Watch was afforded coverage for losses arising from negligent installation of the extinguisher system and that the endorsement removed this protection, thereby substantially reducing the insurance coverage.

Having concluded that the original policy provided coverage for the faulty installation of an extinguisher system and that the endorsement effectively removed such coverage, we must determine whether an insurer is obligated to notify the insured of the reduction in coverage. It is undisputed that Canadian neither notified Fire Watch that the endorsement in question reduced its coverage nor offered to rebate any of its premiums because of the reduction. We have been unable to locate any Minnesota cases which directly consider this issue. However, other courts which have considered the matter impose a duty upon the insurer to notify the insured of such a modification of coverage.

Representative of these decisions is *Allstate Ins. Co. v. Reeves,* 66 Cal.App.3d 464, 469, 136 Cal.Rptr. 159, 162 (1977), in which the court stated:

"We think the law is well established that an insurer must convey to the insured an explanation of the provisions of his insurance policy in terms which he can comprehend. As we said in *Young v. Metropolitan Life Ins. Co.* (1969) 272 Cal. App.2d 453 at 460–461, 77 Cal.Rptr. 382 at 387, 78 Cal.Rptr. 568:

" 'It is now firmly settled that insurance contracts are contracts of adhesion

between parties not equally situated * * *. Consequently, the insurer, as the dominant and expert party in the field, must not only draft such contracts in unambiguous terms but must bring to the attention of the insured all provisions and conditions which create exceptions or limitations on the coverage * * *.'

* * * * * *

"We deem that fairness requires that when an insurer makes basic coverage changes in insurance afforded a long-time insured, it has an obligation to inform the insured, by cover-letter or a conspicuous heading to the amendatory endorsement, or some similar means, that the endorsement contains significant changes in coverage, and offer to explain and discuss the significance of the changes to the insured upon request."

Further, in *Solomon v. Continental Ins. Co.* 122 N.J.Super. 125, 133, 299 A.2d 413, 417 (1972), the New Jersey court stated:
"The average layman who receives a 'broad form' of a homeowners' policy would normally expect personal liability coverage for accidental injuries suffered on his property. He has a right to rely upon reasonable anticipated coverage and should not be subject to hidden pitfalls. * * * As already noted, we perceive no exclusionary clause applicable to the named insureds. In fairness to the policyholders, exclusions must be 'so prominently placed and so clearly phrased that "he who runs can read."' * * * Any exclusionary or limiting provision conceived by reading collectively various clauses scattered throughout the basic policy, and the attached rider, would not bar plaintiffs from claiming the coverage they reasonably anticipated." [3]

We believe that these cases represent a sound, equitable approach to the problem. Consequently, we adopt as the rule in Minnesota that, when an insurer by renewal of a policy or by an endorsement to an existing policy substantially reduces the prior insurance coverage provided the insured, the insurer has an affirmative duty to notify the insured in writing of the change in coverage. Failure to do so shall render the purported reduction in coverage void. Any question of an individual's insurance coverage shall then be determined in accordance with the terms of the original policy prior to the renewal or endorsement.

Applying the rule to the facts of this case, we conclude that since Canadian did not provide a written explanation notifying Fire Watch that the endorsement substantially reduced its insurance coverage, the endorsement is void. Under the original policy, prior to the purported endorsement, Fire Watch was provided insurance coverage for any loss occasioned by the negligent installation of the system. Since a factual determination has not been made which would definitively exclude negligent installation of the system as a contributing cause to the ultimate damage to the restaurant occasioned by the conflagration, Fire Watch is entitled to coverage and to be provided with a defense under the policy.

Having disposed of the matter, we do not pass on the issue raised as to whether an insured party may conditionally accept a proposed endorsement to an insurance policy. However, we do note that Fire Watch's interpretation of the insurance coverage afforded by the policy in its letter which was forwarded with the executed endorsement to Canadian is consistent with this opinion. Contrary to the opinion expressed by the trial court, we do not consider the interpretation in the letter to be a mere restatement of the terms of the endorsement. Rather, it acknowledges that Fire Watch would not be provided insurance coverage for any losses suffered because of a defect occurring during the manufacture of the system.

Reversed.

**3.** See, also, *Navegacion Goya, S.A. v. Mutual Boiler & Machine Ins. Co.* 411 F.Supp. 929 (S.D.N.Y.1975); *Transamerica Ins. Co. v. McKee,* 27 Ariz.App. 158, 551 P.2d 1324 (1976); *Gyler v. Mission Ins. Co.* 10 Cal.3d 216, 110 Cal.Rptr. 139, 514 P.2d 1219 (1973).