Robert V. **CAMPBELL, et al.,**
**Appellants,**

v.

**INSURANCE SERVICE**
**AGENCY, Defendant,**

**Continental Insurance**
**Company, Respondent.**

No. C1–87–2346.

Court of Appeals of Minnesota.

May 24, 1988.

A. Blake MacDonald, MacDonald, Munger, Downs & Munger, Duluth, for appellants.

John D. Kelly, Richard J. Leighton, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, for respondent.

Heard, considered and decided by HUSPENI, P.J., and PARKER and MULALLY,* JJ.

## OPINION

PARKER, Judge.

The home of Robert and Patricia Campbell was extensively damaged by two storms on Lake Superior. The Campbells brought an action to recover storm damages to their home claimed to be covered by their insurance policy and alleging negligence on the part of an employee of their insurer, Continental Insurance Company.

The trial court held, as a matter of law, there was no coverage under the policy and made no determination on the negligence of Continental employee Brown. We reverse.

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

In 1978, Robert and Patricia Campbell purchased a home on Lake Superior. The Campbells consulted their insurance agent, William Kovala, an independent broker with Insurance Service Agency (ISA). Kovala recommended a Personal Comprehensive Plan (PCP) with Continental. The policy did not cover floods; however, Kovala knew the Campbells had flood coverage through the National Flood Insurance Program, which they had assumed upon purchase of the lake home. With these two policies, Kovala believed the Campbells had the broadest coverage available on their property.

Continental offered the Campbells the "standard perils" option with reduced coverage, as well as "broad perils" for increased coverage. The Campbells selected the broad perils coverage, identified as an "all-risk policy" in the policy manual as follows:

*Broad Perils:*

If shown on the Coverage Data Page, the Broad Perils also apply to the property covered under your Building and Personal Coverages. We cover *all risks* of direct physical loss or damage to the property covered except as excluded as follows * * *.

(Emphasis added).

The Campbells carried National flood insurance from 1978 to 1984. In 1984, Kovala erroneously advised the Campbells that the National Flood Insurance Program would no longer cover any property damage resulting from any perils on Lake Superior. Consequently, the Campbells allowed the policy to lapse.

In December 1984 the Campbells renewed their coverage with Continental. The Campbells received the policy at their home, but did not review it thoroughly. The renewal policy contained a "special notice to policyholders" which identified a number of revisions. The renewal policy did not call attention to the "Special Provisions Amendment."

Kovala's office sent the PCP policy with the amendments to the Campbells. Kovala had not read the "Special Provisions Amendments," which severely reduced the coverage; Continental had not notified Kovala of the changes. Consequently, Kovala did not send the Campbells a cover letter with the amendments specifically noting the restrictions.

In October 1985 Campbell sought recovery for minor lake damage. He discussed the question of additional coverage with Kovala and Robert Brown, a Continental adjuster. Brown denied coverage based on the water damage exclusion. However, Brown offered to investigate whether additional coverage was available through federal flood insurance. He told Campbell he would convey the information to Kovala and that Campbell should contact Kovala. Brown called ISA for information and was told that no other coverage was available. Kovala later related this to Campbell.

In the evening of November 18, 1985, a severe storm came up on Lake Superior. Rain driven by fierce winds of 50–55 miles per hour and waves loaded with rocks, small boulders and sand buffeted the home. One window, covered by what was later determined to be a defectively constructed and installed shutter, shattered. Plywood paneling was placed over the unbroken inside windows, but it could not withstand the force of the storm. The paneling and the inside window crashed in upon the floor; waves, rocks, sand and rain poured in. The living/dining room area was saturated with water.

Lake Superior's water level was high all year due to a combination of natural forces and actions of the Army Corps of Engineers. The Corps had allowed the water level to remain higher than usual. Additionally, precipitation in September and October 1985 had been 150 percent of normal.

On December 1, 1985, another storm occurred. Due to the high water and wind, a portion of the Campbells' foundation had been eroded. Waves tore the side and corner of the house along the lakeside. The house was in danger of slipping off its foundation and going into the lake.

Repairs were made after both storms, resulting in costs totaling $50,761.75.

Campbell filed a claim for the damage with Kovala. Continental denied coverage under the water damage exclusion of the policy, stating, "[w]e do not cover damage caused by water or overflow of a body of water or water below the surface of the ground." Continental therefore denied the claims in their entirety.

The Campbells contend the damage was the result of mixed perils such as the rain, wind, rocks, ice, waves, high lake level and defective shutters. They brought an action in district court against ISA and Continental for negligence on the part of Kovala and Brown and against Continental for refusing to pay under the insurance contract. Prior to trial, ISA and Kovala settled by *Pierringer* release.

The issue at trial was whether the water exclusion applied to bar all the claimed causes of damage. At the close of evidence, Continental moved for a directed verdict and the trial court granted it. The Campbells appeal, claiming that policy exclusions for loss caused by waves and flood do not preclude coverage for loss when testimony establishes multiple causes of damage, with no one factor being the overriding cause. They also claim that Continental is liable for the negligent actions of employee Brown.

## ISSUES

1. Did the trial court err in concluding that the insurance policy is not ambiguous and that the damage incurred by the Campbells was excluded by the policy?

2. Did the trial court err in refusing to submit to the jury the question of Continental's negligence?

## DISCUSSION

### I

In reviewing a trial court order granting a directed verdict, this court must accept as true all evidence favorable to the party against whom the motion was decided, as well as all inferences which can be deduced from that evidence. *Hoven v. Rice Memorial Hospital*, 396 N.W.2d 569, 570 (Minn.

1986). A directed verdict is appropriate only in the exceptional case

> where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question for determination becomes one of law for the court.

*Henkel v. Holm*, 411 N.W.2d 1, 4 (Minn.Ct. App.1987) (quoting *Schmanski v. Church of St. Casimir of Wells*, 243 Minn. 289, 291–92, 67 N.W.2d 644, 646 (1954)).

The Campbells contend that the language of the insurance contract is ambiguous because the policy does not deal with factors which act together to produce damage. Determination of whether insurance contract language is ambiguous is a question of law to be decided initially by the trial court. *Amatuzio v. United States Fire Insurance Co.*, 409 N.W.2d 278, 280 (Minn.Ct.App.1987). If the terms of the policy are plain and unambiguous, their plain meaning should be given effect. *Home Mutual Insurance Co. v. Thalman*, 387 N.W.2d 219, 222 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. June 30, 1986).

The policy should be construed as a whole, with all doubts about the meaning of the language to be resolved in favor of the insured. *Canadian Universal Insurance Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn.1977). The terms of an insurance policy should be construed according to what a reasonable person applying for this type of insurance would have understood the terms to mean. *Id.*

■ The trial court erroneously concluded that the terms of the policy were plain and unambiguous and excluded the damages to the Campbell home. The Campbells had contracted for an "all-risk" policy. The policy did not exclude damage due to rain, ice, sand, rocks, wind or defective shutters. The question of causation of damages resulting from a storm is a fact question to be submitted to the jury.

■ Thus, whether a winter storm over a lake is primarily one resulting in "wave action" or a combination of factors involving wind, rain and blowing sand and rocks is not to be determined by any arbitrary

rule of law. *See Anderson v. Connecticut Fire Insurance Co.*, 231 Minn. 469, 473–74, 43 N.W.2d 807, 811 (1950).

[It is] for a jury to determine whether a windstorm is the efficient and proximate cause of the damage to the building within the coverage of the insurance policy, or whether [some other phenomenon] was the efficient and proximate cause thereof within the meaning of the exclusionary clause.

*Id.* at 476–77, 43 N.W.2d at 813.

■ Continental argues that when excluded perils are combined with included perils, the policy should be construed in favor of the excluded perils. We disagree. It is for the jury to determine. Accordingly, the jury may be instructed that the damages can be segregated if the evidence permits such a result. The jury may find that some causes of a given damage are covered and some are excluded.

■ Damages resulting from concurrent causes are covered so long as the covered cause is a direct cause of the damage. An insured is entitled to recover from an insurer when cause of the loss is not excluded under the policy. This is true even though an excluded cause may also have contributed to the loss. *Henning Nelson Construction Co. v. Fireman's Fund American Life Insurance Co.*, 383 N.W.2d 645, 653 (Minn.1986); *Fawcett House, Inc. v. Great Central Insurance Co.*, 280 Minn. 325, 328, 159 N.W.2d 268, 270 (1968); *Anderson*, 231 Minn. at 476, 43 N.W.2d at 812.

■ The evidence indicated that there were eight possible causes of the damage to the Campbell home, any of which could have contributed to the damage. Thus, if one excluded factor is not the overriding cause, Continental may not deny coverage.

a. *The Original Policy.*

Continental maintains that its policy is not ambiguous. A general description of the PCP coverage to be provided the Campbells is given within the body of the policy under the heading of "Broad Perils." A lengthy list of exclusions follows.

The less-inclusive "Standard Perils" section states:

We cover direct physical damage to covered property resulting from the following causes of damage:

(a) Fire and lightning.

(b) Windstorm or hail. However, we do not cover damage

(1) to the inside of a building or property in the building caused by rain, snow, sleet, sand or dust *unless* the wind or hail first damages the roof or wall and they enter through the resulting opening.

(1) Breakage of glass or safety glazing material which is part of a building, storm door, or *storm window.* We also cover damage to personal property caused by the breakage of glass or material.

(Emphasis added). The broad perils, by virtue of covering "all risks," would necessarily include the coverage provided under the standard perils.

The policy's exclusionary clause specifies certain events or risks that are not covered, including:

E. General Causes of Damage to Covered Buildings and Personal Property which are not covered (applies to Standard and Broad Perils).

These are the causes of damage either directly or indirectly that we do not cover.

(2) Water damage.

We do not cover loss caused by

(a) flood;

(b) surface water;

(c) waves;

(d) tidal water;

(e) overflow of a body of water;

(f) spray from any of the above;

\*　　\*　　\*　　\*　　\*　　\*

We do not cover the above whether or not driven by wind.

The November storm involved a high lake water level, wind, waves, rain and rocks. The December storm involved wind, waves and snow. In these storms, ice, rain, flying rocks, a high water level, wind, waves and

faulty shutters were all possible causes of the damage. The trial court held that the policy was clear and that waves were the cause of the damage. The issues consequently were not submitted to the jury.

b. *The Renewal Policy.*

Continental maintains that the Campbells' insurance policy was amended. Continental further asserts that because the Campbells actually received a copy of the renewal policy in December 1984, notice had been given.

It is firmly settled that insurance contracts are contracts of adhesion between parties not equally situated. Consequently, the insurer must bring to the insured's attention all provisions and conditions that create exceptions or limitations on the coverage. *Canadian Universal*, 258 N.W.2d at 574–75. The insurer who makes basic insurance coverage changes is obligated to inform the insured by cover letter or a conspicuous heading to the amendatory endorsement. *Id.* at 575. Exclusions must be so prominently placed and so clearly phrased that "he who runs can read." *Id.*

The Campbells received no cover letter from their agent or Continental. In fact, the agent did not even know of the sweeping changes. Additionally, the first "notice" the Campbells would have seen would be a bold blue sheet stating:

> Your renewal policy contains better protection than ever. New and revised coverages have been added per the enclosed PCP 100 Coverage Enhancement Amendment. Contact your agent if you have any questions.

No mention was made of the special provisions amendment which qualified the all-risk policy as inapplicable to "mixed perils."

■ It is the rule in Minnesota that when an insurer, by renewal of a policy or by an endorsement to an existing policy, substantially reduces the prior coverage provided the insured, the insurer has an affirmative duty to notify the insured by written explanation of the change in coverage. *Id.* Failure to do so will render void the purported reduction in coverage. Coverage shall then be determined in accordance with the terms of the original policy prior to the renewal or endorsement. *Id.*

■ The renewal policy exclusions are very specific on weather conditions, defective materials and decisions made by a governmental body. Continental's specificity in excluding contributory causes in the renewal policy strongly suggests their concern that the original policy contained ambiguities. We hold that the renewal policy is void and that the original policy remained in effect during the period of the two storms in question.

**II**

■ The Campbells claim that Continental is vicariously liable for the negligence of ISA agent Kovala. Kovala could have been liable for the misrepresentation made on the federal flood insurance. However, shortly before trial the Campbells settled with ISA and Kovala, releasing them from liability by *Pierringer* release. This release effectively relieved Continental from any vicarious liability arising out of the negligence of ISA or any of its agents. *Reedon of Faribault, Inc. v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 418 N.W.2d 488, 490–91 (Minn.1988).

However, the Campbells further contend Continental is liable for damages caused by the false information provided by Robert Brown, the Continental insurance adjuster. After investigating the earlier claim in October, Brown offered to investigate whether alternate coverage was possible through the National Flood Insurance Program. He told Campbell he would convey the information to Kovala and that Campbell should contact Kovala.

On November 6, 1985, Brown called ISA and made the notation, "called agency, nothing available one could buy that they know of." Campbell had already been told by ISA that no coverage was available. Thereafter, Campbell contacted Kovala, who told him no coverage was available. Testimonial and documentary evidence showed this information to be incorrect. Shortly thereafter the first storm struck, devastating the Campbell home. Some

months later, the Campbells obtained federal flood insurance and are currently covered.

At common law, an insurance agent's duty to offer, advise or furnish insurance coverage to an insured may arise from special circumstances surrounding the relationship. *Johnson v. Urie*, 405 N.W.2d 887, 889 (Minn.1987). The *Restatement (Second) of Torts* § 323 (1965) states:

> One who undertakes * * * to render services to another which he should recognize as necessary for the protection of the other's * * * things, is subject to liability * * * resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

The supreme court in *Reedon* discussed application of this rule to insurance companies, stating, "it only owes a duty if it undertook to render services to respondent." *Reedon*, 418 N.W.2d at 492. There is evidence that Brown assumed the responsibility of rendering a service to the Campbells.

It is contended that had Brown obtained correct information on federal flood insurance by seeking information from someone other than ISA, the Campbells could have obtained federal flood insurance prior to the loss in question; the Campbells claim to have relied on that information to their detriment. The trial court did not deal specifically with Brown's claimed negligence, nor Continental's responsibility for his actions.

It is unclear from the record whether Campbell actually relied on information directly supplied by Brown. Consequently, the jury must determine whether Brown was negligent in his actions, whether Continental is liable for the negligent misrepresentation of its employee, Brown, and whether any such negligence was a direct cause of Campbell's damages.

## DECISION

The directed verdict is reversed. We remand to the trial court for a jury determination of (1) whether damage suffered by the insured is excluded by the insurance policy, and (2) whether Continental Insurance Company is liable for negligent misrepresentations by its insurance adjuster.

Reversed and remanded.