**Ralph G. SAMUELSON, Respondent,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.**

**No. C2–89–674.**

Court of Appeals of Minnesota.

Oct. 10, 1989.

Review Denied Nov. 22, 1989.

Daniel T. Cody, St. Paul, for respondent.

Thomas C. Athens, Arvesen, Lundeen, Hoff, Svingen, Athens & Russell, Fergus Falls, for appellant.

Heard, considered and decided by SHORT, P.J., and FOLEY and LOMMEN *, JJ.

## OPINION

A. PAUL LOMMEN, Judge.

This appeal arises from a declaratory judgment action brought by respondent Ralph G. Samuelson to establish the right to resolve an underinsured motorist claim through arbitration in accordance with the terms of his original insurance policy. We reverse.

## FACTS

Sometime between 1975 and 1977, Samuelson's father began doing automobile insurance business with appellant Farm Bu-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

reau Mutual Insurance Company. In 1977 or 1978, he purchased a car for Samuelson and insured it with Farm Bureau under a policy known as the "Banner" policy. This policy provided for the insured's right to arbitrate claims arising under the uninsured and underinsured coverages.

Clayton Porter, the Operations Manager for Farm Bureau, testified that in 1979 the insurance company changed the way in which it handled underinsured motorist claims. Effective July 1979, the Banner policy no longer provided for the arbitration of underinsured motorist claims. Porter testified that the insureds would have received a policy stuffer notifying them of highlights in policy changes with the reissuance of the policy.

Porter also testified that in January 1982, as a result of a decision by Farm Bureau's underwriting department, Farm Bureau changed Samuelson's Banner policy to a standard "Auto II" policy. Samuelson was notified of this change and signed both a cancellation of the Banner policy and an application for reinstatement under the Auto II policy. Porter testified that a new policy booklet and an information stuffer would have been sent to Samuelson as a result of this change. The Auto II policy also does not contain any provision for the arbitration of underinsured motorist claims.

Samuelson was injured in an automobile accident on February 5, 1983. His father assisted in handling the claims relating to that accident and determined that Samuelson was covered under the underinsured motorist provision with Farm Bureau.

In early 1986, Samuelson's father contacted a claims representative for Farm Bureau to discuss his son's rights under the underinsured motorist coverage and determine how the procedures for filing an underinsured claim were handled. Samuelson's father testified that the representative referred him to the policy booklet where the arbitration provisions appeared. He testified that when he contacted Farm Bureau in April or May 1986, he again was told this booklet would be used relative to the 1983 accident. He further testified

that he received no other booklets relative to insurance coverage for his son. According to Porter, the policies containing the change had been mailed to the Samuelsons on five occasions prior to the accident.

The trial court findings indicate that the change in the insurance policies occurred in January 1982 with the issuance of the Auto II policy. After determining that the change from arbitration to litigation constituted a substantial reduction in coverage, the trial court found that mere proof of mailing and receipt of a policy containing a substantial reduction in prior coverage was not enough to show that Farm Bureau had met its affirmative duty to notify the insured by written explanation of the change in coverage. The court concluded that Samuelson was entitled to a declaratory judgment that he had the right to arbitrate the underinsured motorist claim in accordance with the terms and conditions of the arbitration clause in the Farm Bureau Banner policy.

### ISSUES

1. Did the trial court decide the case on issues not litigated at trial?

2. Were the trial court's findings of fact supported by the evidence?

3. Did the change in respondent's insurance coverage whereby underinsured motorist claims were to be resolved through litigation rather than arbitration constitute a substantial reduction in insurance coverage?

### ANALYSIS

In a declaratory judgment action tried without a jury, the court as the trier of facts must be sustained in its findings unless they are palpably and manifestly contrary to the evidence. *Ketterer v. Independent School District No. 1,* 248 Minn. 212, 229, 79 N.W.2d 428, 440 (1956). This court need not give deference to the trial court's decision on a legal issue. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission,* 358 N.W.2d 639, 642 (Minn.1984).

1. Farm Bureau argues first that the trial court erred by deciding this case on issues Samuelson did not raise at trial. Specifically, Farm Bureau contends that the only theory Samuelson raised was whether he had received a new policy jacket.

■ The record reflects that the following discussion occurred at the start of the trial:

THE COURT: On this declaratory judgment action, and the main issue is whether or not the plaintiff is entitled to arbitration.

MR. CODY: The main issue is really which policy was in force and effect on the day of the accident involved here, which was February 5, 1983. Was that right?

MR. ATHENS: I will agree to that, Your Honor.

This agreement encompasses the trial court's determination of which policy was in effect at the time of the accident and also the determination of whether the change in policy represented a substantial reduction in Samuelson's insurance coverage.

■ 2. Farm Bureau next argues that several of the trial court's findings of fact are not supported by the evidence. Throughout the findings, the trial court appears to have determined that the change in the insurance coverage occurred in 1982 at the time the Samuelson policy was changed from the Banner policy to the Auto II policy. However, testimony from Clayton Porter clearly establishes that the change became effective with the reissuance of the July 1979 addition to the Banner policy. We conclude these findings are clearly erroneous.

■ In addition, the trial court's finding that Samuelson relied on representations apparently made by local agents that the same coverages would continue under the Auto II policy is not supported by evidence in the record. The words "same coverages" appear on the Auto II policy application, but there is no evidence that Samuelson or his father ever saw the notation.

■ 3. The trial court concluded that the change in the Farm Bureau policy whereby unresolved underinsured motorist claims were to be settled through litigation rather than arbitration constituted a substantial change in coverage requiring detailed notice to the insured. Farm Bureau argues, and we agree, that this change was a procedural change which did not result in any reduction of Samuelson's basic insurance coverage.

■ Insurance contracts are contracts of adhesion between parties not equally situated. As a result, the insurer must bring to the attention of the insured all provisions and conditions which substantially reduce the prior coverage. *Canadian Universal Insurance Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 574–75 (Minn. 1977). When the insurer makes basic coverage changes, it has an obligation to inform the insured by cover letter or a conspicuous heading to the amendatory endorsement. *Id.* at 575. Exclusions must be prominently placed and clearly phrased. *Id.*

The trial court relied on *Canadian Universal* and *Campbell v. Insurance Service Agency*, 424 N.W.2d 785 (Minn.Ct.App. 1988), in determining that Farm Bureau failed to meet its affirmative duty to notify the insured by written explanation of the change in coverage. These cases are distinguishable from the present case and do not control our decision.

In *Canadian Universal,* the insured was a company engaged in the business of selling, distributing and servicing fire protection equipment. Suit was brought against the insured for a restaurant fire loss. The insurer then sought a judgment that the restaurant fire loss was excluded from coverage under the "completed operations and products liability" insurance policy. The original policy contained a business risk exclusion which covered losses arising from the negligent installation of a fire protection system. The endorsement forwarded by the insurer which was intended to replace the business risk exclusion would have denied coverage for both the negligent installation and the manufactur-

ing of the system; thus it was found to substantially reduce the insured's coverage. The court concluded that since Canadian did not provide a written explanation notifying Fire Watch that the endorsement substantially reduced its coverage, the endorsement was void. *Canadian Universal*, 258 N.W.2d at 571–75.

*Campbell* involved an action brought by the insureds to recover storm damages to their home under an "all-risks" policy. The insureds contended that the damage was the result of mixed perils such as rain, wind, waves, rocks, high lake level, and defective shutters. The initial policy covered damage due to rain, ice, sand, rocks, wind or defective shutters but excluded loss caused by waves or overflow of a body of water. The renewal policy qualified the all-risk policy as inapplicable to "mixed perils." This court determined that the renewal policy substantially reduced the prior coverage and held that the renewal policy was void because the insureds had not received a written explanation of the change in coverage. *Campbell*, 424 N.W.2d at 787–90.

The change in coverage in the present case is a change in the procedure through which the unresolved underinsured motorist claims are settled. This change had no effect on Samuelson's prior coverage. He has the same basic insurance coverage now as he had under his original policy. Further, there is no indication that Samuelson knew how the original procedure operated prior to the change or that he relied on that procedure to continue after the policy was changed. We hold that this change does not constitute a substantial reduction in coverage requiring detailed notice to the insured.

### DECISION

We reverse the decision of the trial court and order judgment that Samuelson's underinsured motorist claim be resolved by litigation under the terms of the insurance policy in effect on the date of the accident.

Reversed.