**DUANE WOLFF AGENCY, INC., Respondent,**

v.

**NORTHSHORE MARINE, INC., Appellant.**

**No. C8-90-1382.**

Court of Appeals of Minnesota.

Dec. 4, 1990.

Robert N. Roningen, Duluth, for respondent.

Keir R. Johnson, Conrad M. Fredin Law Office, Duluth, for appellant.

Considered and decided by SHORT, P.J., and LANSING and GARDEBRING, JJ.

## OPINION

GARDEBRING, Judge.

Appellant Northshore Marine, Inc. (Northshore) was ordered to pay an additional $4906 in premiums for a commercial liability policy purchased from respondent Duane Wolff Agency, Inc. (Agency). Northshore appeals, contending it did not receive notice of the change in terms for calculating premiums as required by statute. Minn.Stat. § 60A.30 (1986). We reverse.

## FACTS

Northshore sells and services pleasure boats and accessories. In 1986, Northshore purchased an Auto–Owners Insurance commercial general liability policy from Agency. The policy was issued with a flat fee premium for the policy period of October 8, 1986, to October 8, 1987. The declarations page states the policy is not auditable.

The policy was renewed in 1987 for the 1987/1988 policy period. The top of the declarations page is identical to that of the original policy except that the audit period was changed from "not auditable" to "annual." No other notice of the change in methodology for determining premiums was given. Near the end of the policy period, Agency audited Northshore and discovered that the volume of business had grown from $300,000 to an amount exceeding $1 million. As a result, the insurance premium was retroactively recalculated and Northshore was billed an additional $4906.

Northshore refused to pay, arguing that it had contracted for a nonauditable policy and that it was not provided any notice that the terms of the renewal policy had changed from those of the original. The

trial court found that the renewal policy contained a provision which permitted the insured to cancel the policy within 30 days of receipt and that Northshore failed to avail itself of that opportunity. The court ordered Northshore to pay the $4906 in additional premiums. Northshore now appeals.

## ISSUE

Did the trial court err as a matter of law in holding that receipt of the renewal policy, by itself, constituted sufficient notice of the change in terms as required by Minn. Stat. § 60A.30 (1986)?

## ANALYSIS

■■■■ The facts are undisputed. The only issue on appeal is whether the trial court correctly interpreted Minn.Stat. § 60A.30 (1986). Interpretation of a statute is a question of law; therefore, no deference need by given to the trial court's decision. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

Minn.Stat. § 60A.30 (1986) provides in relevant part:

> If an insurance company * * * offers or purports to offer to renew any commercial liability * * * policy at less favorable terms as to the dollar amount of coverage or deductibles, higher rates, and/or higher rating plan, the new terms, the new rates and/or rating plan may take effect on the renewal date of the policy if the insurer has sent to the policyholder notice of the new terms, new rates and/or rating plan at least 30 days prior to the expiration date. If the insurer has not so notified the policyholder, the policyholder may elect to cancel the renewal policy within the 30–day period after receipt of the notice.[1]

Initially, we must determine whether notice was properly given pursuant to the statute. The statute is silent concerning the type or form of notice required. Therefore, we look to analogous cases address-

1. The statute was amended in 1987 to increase   the notice period to 60 days.

ing renewal insurance policies and changes in terms and conditions.

In *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570 (1977), the original policy was amended to remove coverage for losses arising out of negligent installation of fire protection equipment. This amendment was effectuated by substituting the word "regardless" for the word "if." The insurance company did not notify Fire Watch of this change in coverage. The supreme court held:

> when an insurer by renewal of a policy or by an endorsement to an existing policy substantially reduces the prior insurance coverage provided the insured, the insurer has an affirmative duty to notify the insured in writing of the change in coverage. Failure to do so shall render the purported reduction in coverage void. Any question of an individual's insurance coverage shall then be determined in accordance with the terms of the original policy prior to the renewal or endorsement.

*Id.* at 575. The court concluded that since the insurance company failed to provide a written explanation of the change in coverage, the renewal endorsement was void. *Id.*

In *Campbell v. Insurance Service Agency*, 424 N.W.2d 785 (Minn.App.1988), the policyholders received a renewal policy which contained a "special notice to policyholders" identifying several revisions. The notice did not call attention to a "Special Provisions Amendment" which severely reduced coverage. The insurance company argued that because the policyholders had received a copy of the renewal policy, notice had been given. This court stated:

> [T]he insurer must bring to the insured's attention all provisions and conditions that create exceptions or limitations on the coverage. The insurer who makes basic insurance coverage changes is obligated to inform the insured by cover letter or a conspicuous heading to the amendatory endorsement.

*Id.* at 790 (citations omitted). The renewal policy was held void and the original policy was considered to be still in effect. *Id.*

The facts of the present case are similar to those in *Campbell*. The one-word change on the "Declarations" page is analogous to the change in the endorsement found to be inadequate notice of a change in coverage in *Campbell*. Further, a significant and fundamental change in the methodology for calculating premiums, which could significantly increase the cost of the same coverage, warrants the same type of specific notice required by *Canadian Universal* and *Campbell*. Agency failed to inform Northshore by cover letter or conspicuous heading that the policy had been amended. Receipt of the renewal policy, by itself, is not sufficient notice to satisfy Minn.Stat. § 60A.30.

■ Secondly, we must determine the appropriate remedy. Unlike *Canadian Universal* and *Campbell*, notice of a change in premium rates is governed by Minn.Stat. § 60A.30 (1986). The trial court relied upon the "remedy" provided therein—cancellation of the renewal policy—and found that Northshore did not avail itself of the opportunity to cancel.

Northshore cannot be said, on these facts, to have failed to act upon the opportunity to cancel. That right is afforded by the statute "within the 30-day period after receipt of the notice." Minn.Stat. § 60A.30. In this instance, there was no effective notice, and therefore no opportunity to cancel the policy. It was only much later, near the end of the policy period, that Agency conducted an audit and billed Northshore the additional premiums.

We hold that where there is no effective notice of a change of rate in a renewal policy, the change is void and the rate structure of the original policy remains in effect.

## DECISION

The trial court misconstrued Minn.Stat. § 60A.30 (1986). An insurance company cannot change the terms and conditions of an insurance policy without providing no-

tice of the changes by cover letter or conspicuous heading in the renewal policy. Therefore, the trial court's order requiring Northshore to pay $4906 in additional premiums is error.

Reversed.