10 F.3d 568
 Stephen ADAMS, Plaintiff,
American Casualty Company, of Reading, PA,
Intervenor-Plaintiff-Appellee,
v.
Harold W. GREENWOOD, Jr.; John Does, 1-10; Thomas J.
Resch, Defendants,
Resolution Trust Corporation, as receiver for Midwest
Savings Association, F.A., Intervenor-Defendant-Appellant.
AMERICAN CASUALTY COMPANY, OF READING, PA,
Plaintiff-Intervenor-Appellee,
v.
RESOLUTION TRUST CORPORATION, as receiver for Midwest
Savings Association, F.A., Defendant-Intervenor-Appellant.
Donald ZIETLOW, Third Party-Plaintiff,
v.
Harold W. GREENWOOD, Jr.; Donald J. Snede; Robert A.
Mampel; Patrick T. Stead, Third
Party-Defendants-Appellees.
NORTHWEST RACQUET SWIM & HEALTH CLUBS, INC., a Minnesota
corporation, Plaintiff-Appellee,
American Casualty Company of Reading, PA,
Plaintiff-Intervenor-Appellee,
v.
Harold W. GREENWOOD, Jr.; Charlotte Elizabeth Masica;
Donald J. Snede; Robert Arnold Mampel; Muriel Humphrey
Brown; John P. Farry; Thomas Fitzgibbon, Sr.; H. Vincent
Hagstrum; John J. Kenna; Martin J. Kilroy; J.E. Marlin;
Lloyd K. Peterson; Arnie Rydland; William H. Sipple;
Thomas H. Tipton; Defendants-Appellees,
Resolution Trust Corporation, as receiver for Midwest
Savings Association, F.A., Defendant-Intervenor-Appellant.
Richard K. NELSON; Thomas Resch, Plaintiffs,
Resolution Trust Corporation, as receiver of Midwest Savings
Association, F.A., Plaintiff-Appellant,
v.
AMERICAN CASUALTY COMPANY, OF READING, PA, Defendant-Appellee,
MGIC Indemnity Corporation, Defendant.
 Nos. 93-2724, 93-3023, 93-3029 and 93-3306.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 11, 1993.
Decided Nov. 30, 1993.
 
 Ray G. Rezner, Chicago, IL, argued (Wendi Sloane Weitman and Elyse M. Tish, Chicago, IL, April Breslaw, Washington, DC, John P. Martin and John E. Yanish, Minneapolis, MN, on the brief), for appellant Resolution Trust Co.
 William M. Hart, Minneapolis, MN, argued (Thomas H. Crouch and Randy Sharbono, on the brief), for appellee.
 Before JOHN R. GIBSON, MAGILL and BEAM, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The Resolution Trust Corporation, as receiver for Midwest Savings, a failed Minnesota savings and loan, appeals two judgments denying it a share in the proceeds of Midwest's directors and officers insurance. The RTC claims that an endorsement to the policy excluding liability from suits brought by regulatory agencies was void because the insured was not adequately notified that the endorsement was to be included in the 1982 renewal policy. Furthermore, RTC argues that including the endorsement in the 1982 policy was such a reduction in coverage from the earlier policy that the insurer must be said to have refused to renew the policy without notifying the insured of its intent so to refuse. The RTC claims these facts give Midwest a right to demand extended coverage on the terms of its 1979-82 policy. We affirm the district court's[1] entry of both judgments against the RTC.
 
 
 2
 In these consolidated cases the disappointed creditors and the receiver of a failed savings and loan seek to recover the proceeds of a directors and officers policy, which are not ample enough to satisfy all who want a share. Moreover, the insurer intervened, claiming it is entitled to cancel the policy because Midwest procured the policy by fraud. As a first step in resolving a morass of litigation between the directors, the creditors, the receiver and the insurer, the district court attempted to determine the real contenders for the insurance coverage, and concluded that the RTC had no claim.
 
 
 3
 The RTC first appeals the summary judgment entered against it in several cases brought by plaintiffs who bought subordinated debentures from Midwest in 1987 and 1988.[2] After Midwest failed, the debenture holders sued Midwest's officers and directors.[3] American Casualty Company, which had written Midwest's directors and officers policies from 1985 through 1988 and had assumed the obligations under Midwest's earlier policy (originally written by MGIC), intervened in the cases, since determinations made in those cases could result in liability on the policies. The RTC then intervened as a defendant to answer American Casualty's claims. The RTC moved to have the debenture holders' suits stayed on the ground that the RTC was entitled to first chance at the insurance proceeds. The district court entered summary judgment for American Casualty and against the RTC in the subordinated debenture suits, holding that the relevant policy excluded liability from suits brought by regulatory agencies, including the RTC. Adams v. RTC, No. 4-89-CV-330, 1993 WL 181303 (D.Minn. May 19, 1993). We review grants of summary judgment de novo, giving no deference to the district court's decision. St. Paul Fire and Marine Ins. Co. v. FDIC, 968 F.2d 695, 699 (8th Cir.1992). Our task is to determine whether the record, viewed in the light most favorable to the FDIC, shows any genuine issue as to a material fact.
 
 
 4
 The second appeal arises from a case in which the RTC and former officers and directors sued American Casualty for a declaratory judgment that if the RTC prevailed in a separate suit against the directors (RTC v. Greenwood, No. 4-92-CV-2 (D.Minn.)), the judgment would be covered by the directors and officers policy. The district court held that the policy's regulatory exclusion applied to protect American Casualty from any liability stemming from the RTC's suit against the directors. Since the case depended on facts already determined in the Adams case, the court dismissed the RTC's claims with prejudice. Nelson v. American Cas. Co., 831 F.Supp. 1471, 1482 (D.Minn.1993).
 
 I.
 
 5
 The RTC's theory in the subordinated debentures case is that the regulatory exclusion was void because the insurer did not adequately notify Midwest that it was reducing its former coverage when it added the exclusion to the policy. Under this theory, the RTC seeks to reform the 1988-89 policy in effect at the time of Midwest's failure, by eliminating the regulatory exclusion and restoring the more generous terms of the 1979-82 policy.
 
 
 6
 Until mid-1982 Midwest maintained a directors and officers policy with MGIC[4] that had no regulatory exclusion. The policy was to expire on June 1, 1982. MGIC did not renew directors and officers policies automatically, but required the insured to submit extensive current financial information for a new underwriting analysis. MGIC sent Midwest a letter enclosing an application for a new policy on March 22, 1982. The letter specifically mentioned two new exclusions that would appear in the 1982 policy, and offered to sell separate insurance policies that would restore this excluded coverage. However, the letter made no mention of the new regulatory exclusion.
 
 
 7
 After Midwest submitted its application, MGIC issued an insurance commitment (which functions as a quote or offer) dated May 18, 1982.[5] MGIC had checked a box on the first page of the commitment, entitled "Renewal" and left blank the neighboring box entitled "New." The first page of the commitment summarized the proposed policy's contents. The ten endorsements to the policy were stated prominently, including one that: "Excludes suits brought by the F.H.L.B.B., the F.S.L.I.C., etc."[6] The commitment also contained the regulatory exclusion printed in full and by itself on a separate page entitled "General Limitation of Coverage Endorsement."
 
 
 8
 Significantly, the Executive Vice President of Midwest, Charlotte Masica, did not merely sign the commitment to accept it. Instead, she altered two key terms, changing the policy period from one to three years and the liability limit from five to ten million dollars. Thus revised, she signed the commitment on behalf of Midwest, dated it May 28, 1982 and returned it to MGIC.
 
 
 9
 When MGIC delivered the actual policy, the endorsement was again printed on a separate page entitled "General Limitation of Coverage Endorsement." Preceding the endorsement pages was a page entitled "Special Note for Policyholder," which specifically called attention to three new endorsements not relevant here and also stated: "There may be other endorsements attached to the renewal policy as well".
 
 
 10
 There is, in addition, other evidence showing that Midwest had notice of the regulatory exclusion before entering the 1988-89 insurance contract. For instance, Midwest's broker specifically informed it during the 1985 application process in a memorandum that its coverage would have an exclusion for suits by governmental entities. The FHLBB report of its 1985 examination of Midwest, reviewed at the meeting of the Midwest Board on January 6, 1986, specifically brought the regulatory exclusion to the Board's attention.
 
 
 11
 The RTC relies on Minnesota case law requiring an insurer "who makes basic insurance coverage changes ... to inform the insured by cover letter or conspicuous heading to the amendatory endorsement." Duane Wolff Agency v. Northshore Marine, Inc., 463 N.W.2d 562, 564 (Minn.Ct.App.1990) (quoting Campbell v. Insurance Serv. Agency, 424 N.W.2d 785, 790 (Minn.Ct.App.1988)). If the insurer fails in this duty, the new terms are void and the terms of the former policy govern. Canadian Universal Ins. Co. v. Fire Watch, Inc., 258 N.W.2d 570, 575 (Minn.1977).
 
 
 12
 The adequacy of the notice is a question of law, which the court may decide on summary judgment unless some predicate fact is in dispute. See American Casualty Co. v. FDIC, 821 F.Supp. 655, 662 (W.D.Okla.1993). Cf. Benton v. Mutual of Omaha Ins. Co., 500 N.W.2d 158, 160 (Minn.Ct.App.1993) (same question under state, rather than federal law). See also Allstate Ins. Co. v. Fibus, 855 F.2d 660, 663 (9th Cir.1988) (question of fact as to what information insurer gave precludes summary judgment); American Cas. Co. v. FDIC, 822 F.Supp. 1525 (W.D.Okla.1992) (same); FDIC v. American Cas. Co., 814 F.Supp. 1032, 1034 (D.Wyo.1991) (same).
 
 
 13
 There is no question that the summary of coverage on the first page of the commitment was phrased simply and clearly: "Excludes suits brought by the F.H.L.B.B., the F.S.L.I.C., etc." The endorsement itself was quite clearly phrased on a separately printed page of the commitment and the policy. A "Special Note for Policyholder" in the policy stated that there might be other endorsements in addition to three new endorsements (all irrelevant here) specifically mentioned in the "Special Note."
 
 
 14
 While we are aware that the Minnesota courts have insisted on very clear notice of changes by the insurer, see, e.g., Benton, 500 N.W.2d at 160, we conclude that the notice in this case was adequate. We rely first on the prominent, simply worded statement of the exclusion on the front page of the application and the policy. Cf. Government Employees Ins. Co. v. United States, 400 F.2d 172, 175 (10th Cir.1968) (approving an amended renewal policy that contained "a short, separately attached boldly worded" endorsement); American Cas. Co., 821 F.Supp. at 662 (amendment stated in short, separately attached notice was adequate).
 
 
 15
 Equally important is the fact that this was not a typical renewal situation, but in fact a separately negotiated contract which Midwest's vice president, Charlotte Masica, reviewed before the policy was issued. Most telling of all, Masica changed key terms of the quote, and her changes were incorporated into the final contract. See American Cas. Co., 821 F.Supp. at 663 (as part of renewal notice analysis court notes that insureds were sophisticated bankers). We conclude that MGIC properly notified Midwest of the terms of the 1982-85 policy.
 
 
 16
 The RTC argues that there is a question of fact as to whether Midwest received notice of the endorsement, since Charlotte Masica, the Midwest Vice President who signed the contract for the new policy, denies she knew of the endorsement. Masica's affidavit cannot create a question of fact, for the issue here is one of notice, not of actual knowledge. Moreover, an affidavit denying what is established by one's own evidence (here, her signature on the contract, which she does not deny is authentic) does not preclude summary judgment. See Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1363-66 (8th Cir.1983) (where deposition of plaintiff's principal justified summary judgment against it, it could not avoid summary judgment by filing contrary affidavit).
 
 
 17
 Moreover, even if we were to conclude the change in the 1982-85 renewal was not adequately disclosed, there is simply no question that Midwest had notice of the regulatory exclusion before entering the 1988-89 contract. In Midwest's 1985 examination report, the FHLBB criticized the regulatory exclusion in Midwest's directors and officers coverage. Since the Midwest board reviewed the examination report as a group, the RTC simply cannot rely on ignorance of the exclusion.
 
 II.
 
 18
 In the declaratory judgment case, American Casualty prevailed because the regulatory endorsement to the 1988-89 policy excluded liability arising out of suits brought by RTC. RTC now argues that it is entitled to invoke the extended discovery clause of the 1979-82 policy. The argument is this: (1) the 1979-82 policy had a clause requiring the insurer to give notice thirty days before expiration of the policy, if it refused to renew the policy; (2) under the policy if the insurer refuses to renew, the insured has the right to pay for an "extended discovery period" of twelve months during which it can make claims under the old policy; (3) substituting a new policy with the regulatory exclusion endorsement for the old policy which had none is "constructive refusal to renew," citing McCuen v. American Casualty Co., 946 F.2d 1401, 1405 (8th Cir.1991); (4) if an insurer fails to notify the insured of its refusal to renew, the right to demand the extended discovery period is tolled until whenever the insurer finally gives the required notice, citing Minn.Stat.Ann. Sec. 60A.37 (enacted in 1987, years after the events in question). See American Cas. Co. v. FDIC, 999 F.2d 480, 482 (10th Cir.1993) ("if notice of nonrenewal is required, the policy period runs either to the end of the period defined in the agreement or until the notice of nonrenewal becomes effective"). By this logic, the RTC claims that once the court declares the amendment to the policy is a constructive non-renewal, the RTC can then exercise its right to the extended discovery period and present American Casualty with a claim under the still-applicable 1979-1982 policy.
 
 
 19
 This argument has been foreclosed by the district court's determination in the subordinated debenture holders' cases that Midwest was adequately notified of the existence of the endorsement before entering the 1982-85 contract. In American Casualty Co. v. FDIC, 944 F.2d 455, 460 (8th Cir.1991), we held that an insured who agrees to accept an altered "renewal" policy forgoes his claim for extended discovery rights under the old policy. In this case, Midwest's acceptance of a series of policies after notice of the regulatory exclusion in 1982 and afterwards, is inconsistent with its assertion of constructive nonrenewal. The RTC, as successor to Midwest, has no right to any extended discovery period under the 1979-82 policy.[7]III.
 
 
 20
 The RTC further complains of four district court orders (dated October 22, 1992; December 29, 1992; December 31, 1992; and January 22, 1993) which the RTC says put the cases in an unfair procedural posture. The RTC concedes we must review all four rulings under an abuse of discretion standard. We have scrutinized the RTC's filings and the orders and see no sign whatsoever of abuse of discretion.
 
 
 21
 We affirm the orders of the district court.
 
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota
 
 
 [2]
 The subordinated debenture cases before us are: Northwest Racquet Swim & Health Clubs, Inc. v. Greenwood, No. 4-90-CV-930 (D.Minn.); Adams v. RTC, No. 4-89-CV-330 (D.Minn.); Midwest Savings Ass'n v. Zietlow, No. 4-90-CV-345 (D.Minn.)
 
 
 [3]
 In the Zietlow case, Midwest actually sued Zietlow on a promissory note and Zietlow brought in the directors and officers as third party defendants
 
 
 [4]
 MGIC sold its book of directors and officers business to American Casualty's parent corporation in 1983. As a result of that transaction, American Casualty assumed MGIC's liability on the 1982-85 policy
 
 
 [5]
 RTC makes much of the fact that MGIC sent the commitment to Professional Writers, Inc., an insurance agent, which RTC says was legally the agent of MGIC, not Midwest. This argument is irrelevant, since no one disputes that the commitment papers reached Midwest's Vice President, Charlotte Masica, who revised and signed them
 
 
 [6]
 The F.S.L.I.C. was, of course, the RTC's predecessor agency
 
 
 [7]
 The RTC urges us to reverse on the grounds that the district court's ruling in the declaratory case was based on collateral estoppel from the subordinated debentures case. The RTC says that collateral estoppel is not applicable here. Whether the district court considered the issues determined by virtue of collateral estoppel or simply declined to reiterate the same legal and factual discussion just articulated in another case involving the same parties before him is immaterial. The result would be the same
 The RTC further argues that the issues decided in the subordinated debentures case are not identical to those in the declaratory judgment case and therefore the district court erred in considering its earlier decision conclusive. The RTC declined to state the facts anew in its brief on appeal of the declaratory judgment, choosing instead to incorporate by reference the facts stated in the subordinated debenture appeal brief. We need say no more.