The WALDOBORO BANK,
F.S.B., Plaintiff,

v.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA,
Defendant.

Civ. No. 91–0013–B.

United States District Court,
D. Maine.

Oct. 11, 1991.

William D. Robitzek, Berman, Simmons & Goldberg, Lewiston, Me., for plaintiff.

Lewis V. Vafiades, Vafiades, Brountas & Kominsky, Bangor, Me., and Thomas S.

Shore, Jr., Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for defendant.

## ORDER

BRODY, District Judge.

The plaintiff, Waldoboro Bank, F.S.B., and the defendant, American Casualty of Reading, Pennsylvania, have filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56.

The Bank is insured under a Directors' and Officers' Liability Policy issued by American Casualty. Wesley E. Richardson was the Bank President and a member of its Board of Directors.

The Bank arranged for a foreclosure sale of a piece of property on which the Bank held a mortgage. Theodore F. Stone, not involved in the present case, offered to cure the default and pay off what was owed on the mortgage if the Bank would then give him title to the land. Richardson indicated that Stone could only purchase the property from the Bank after the Bank had purchased the property at the foreclosure sale. Stone evidently relied on this statement and did not attend the foreclosure sale.

Stone brought suit in Lincoln County Superior Court in Maine for fraudulent misrepresentation by Richardson and the Bank. *See Stone v. Richardson and Wal-doboro Bank, F.S.B.*, docket no. CV–87–04. The jury returned a plaintiff's verdict for $25,000 in compensatory damages and $100,000 in punitive damages. The defendants in that case filed a motion for Judgment Notwithstanding the Verdict pursuant to Me.R.Civ.P. 50. Prior to a ruling on that motion and prior to the expiration of the appeal period, the parties in that case settled for $85,000. Richardson was later indemnified by the Bank regarding his liability under the settlement.

The Court will grant summary judgment only if the record before the court provides "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

■ Clause (b) of the Directors' and Officers' Liability Policy requires American Casualty to reimburse the Bank for those losses which the Bank "is *required* to indemnify or for which the Association has, to the extent *permitted* by law, indemnified the Directors and Officers" (emphasis added).[1] The crux of this case therefore rests on whether the indemnification in question was either "required" or "permitted by law".

Federal regulations pertaining to a federal savings bank's indemnification of its officers and directors are contained in 12 C.F.R. § 545.121.[2] Indemnification is *re-*

---

1. Paragraph 1(e) of the Policy uses similar language in defining "loss" as

    any amount which the Directors and Officers are legally obligated to pay or for which the Association is *required* to indemnify the Directors or Officers, or for which the Association has, *to the extent permitted by law,* indemnified the Directors and Officers, for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include but not be limited to damages, judgments, settlements, costs ... and defense of legal actions, claims or proceedings and appeals therefrom ... provided, however, such loss shall not include fines or penalties imposed by law or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.
    (Emphasis added.)

2. 12 C.F.R. § 545.121 reads in part:

    (b) *General.* Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an ac-

tion is brought or threatened because that person is or was a director, officer, or employee of the association, for:

   (1) Any amount for which that person becomes liable under a judgment if (sic) such action; and

   (2) Reasonable costs and expenses, including reasonable attorney's fees, actually paid or incurred by that person in defending or settling such action, or in enforcing his or her rights under this section if he or she attains a favorable judgment in such enforcement action.

   (c) *Requirements.* Indemnification shall be made to such period (sic) under paragraph (b) of this section only if:

   (1) Final Judgment on the merits is in his or her favor; or

   (2) In case of:

   (i) Settlement,

   (ii) Final judgment against him or her, or

   (iii) Final Judgment in his or her favor, other than on the merits, if a majority of the

*quired* under § 545.121 only where there is a "final judgment on the merits" in the officer's or director's favor. § 545.-121(c)(1). *See also Harris v. Resolution Trust Corp.*, 939 F.2d 926, 929 (11th Cir. 1991). Indemnification is not *permitted* if the bank fails to give the Office of Thrift Supervision 60 days' notice of its intent to indemnify an officer or director. § 545.-121(c)(2). *See also* § 545.121(f); *Atlantic Permanent Federal Savings and Loan Association v. American Casualty Co. of Reading, Penn.*, 839 F.2d 212, 215 (4th Cir.1988) (dicta interpreting language identical to the present clause (b)).

■ American Casualty must reimburse the Bank under clause (b) of the Policy if the Bank was "required" to indemnify Richardson. Section 545.121(c)(1) does not require the Bank to indemnify Richardson in this case, since Richardson did not receive "final judgment on the merits in his ... favor" in the *Stone* trial. The Bank argues that it was required to indemnify Richardson according to his employment contract with the Bank. The employment contract limits the Bank's indemnity to "the extent permitted by law," which the Bank insists does not preclude indemnification in the present case. The Court, however, finds that this contractual limit embraces the "law" of § 545.121. *See also* § 545.121(f). The Bank's contractual duty to indemnify Richardson must be permissible under § 545.121(c)(2) before the Bank is entitled to reimbursement. *See also* Clause (b), *supra*, 2.

■ American Casualty must also reimburse the Bank under clause (b) of the Policy if the Bank indemnified Richardson "as permitted by law." Section 545.-121(c)(2) permits indemnification only where the federal savings association has given the Office of Thrift Supervision "at least 60 days' notice of its intention to make such indemnification." The Bank does not contest that it violated this provision, but argues that American Casualty lacks standing to raise the notice requirement.

■ The issue of standing concerns "whether the interest sought to be protected by [American Casualty] is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

The "zones of interest" protected by § 545.121 include an insurance company's interest that the Office of Thrift Supervision review of indemnification decisions by federal savings associations. Such review guards against imprudent indemnification decisions by the federal savings association's directors, *see* § 545.121(c)(2)(i)–(iii), and recovery of insurance proceeds for willful acts of the officers or directors, *see id.*, § 545.121(d). Because the notice period affords the Office of Thrift Supervision meaningful review of federal savings association indemnifications and therefore protects American Casualty's interest in reimbursing only permitted claims, American Casualty has standing to raise the notice requirement of § 545.121. *See Association of Data Service Organizations*, 397 U.S. at 153, 90 S.Ct. at 830.

Section 545.121(c)(2) clearly states that the Bank's failure to adhere to the notice requirement means that the indemnifica-

---

disinterested directors of the savings association determine that he or she was acting on good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interest of the savings association or its members.

However, no indemnification shall be made unless the association gives the Office at least 60 days' notice or its intention to make such indemnification. * * *.

(d) *Insurance.* * * * [n]o savings association may obtain insurance which provides for payment of losses of any person incurred as a consequence of his or her willful or criminal conduct.

(f) *Exclusiveness of provisions.* No savings association shall indemnify any person referred to in paragraph (b) of this section or obtain insurance referred to in paragraph (d) of the (sic) section other than in accordance with this section.

tion was not "permitted by law." For this reason, and because the indemnification was not "required," as indicated above, American Casualty is not obligated under clause (b) of the Policy to reimburse the Bank for its indemnification of Richardson. *See also Atlantic Permanent Federal Savings and Loan Association,* 839 F.2d at 215 (dicta interpreting language identical to the present clause (b)).

■ The Bank also argues that it is entitled to reimbursement under clause (a), which requires that American Casualty reimburse the officers and directors of the Bank for any claim resulting from the officers' or directors' wrongful acts. The Court disagrees. Contracts must be construed as a whole so as to give meaning to every provision. *See, e.g., De Matteo Construction Co. v. Maine Turnpike Authority,* 184 F.Supp. 907, 912 (D.Me.1960). The Bank attempts to use clause (a) as a back door to reimbursement, but this argument would eviscerate the "extent permitted by law" requirement in clause (b). The Bank also argues for the first time that it is subrogated to Richardson's potential claim. The Court declines to entertain this new issue at such a late date in the proceeding. *See* Fed.R.Civ.P. 15(a). Therefore, clause (a) does not entitle the Bank to reimbursement from American Casualty.

Accordingly, American Casualty's motion for Summary Judgment is GRANTED and the Waldoboro Bank's Motion for Summary Judgment is DENIED.

SO ORDERED.