Stephen ADAMS

v.

RTC as Receiver for Midwest Federal
Savings and Loan Association,
H. Greenwood, Jr., et al.

MIDWEST SAVINGS ASSOCIATION,
F.A.,

v.

Donald ZIETLOW

v.

RTC as Receiver for Midwest Federal
Savings and Loan Association,
H. Greenwood, Jr., et al.

NORTHWEST RACQUET SWIM
& HEALTH CLUBS, INC.

v.

H. GREENWOOD, Jr., et al.

William FINE

v.

RTC as Receiver for Midwest Federal
Savings & Loan Association, Green
Tree Acceptance, Inc., et al.

LENERTZ, INC., et al.

v.

Thomas J. RESCH, et al.

RESOLUTION TRUST CORPORATION

v.

Harold GREENWOOD, et al.

Richard K. NELSON, et al.

v.

AMERICAN CASUALTY COMPANY.

John KENNA, et al.

v.

AMERICAN CASUALTY COMPANY.

J.E. MARLIN, et al.

v.

AMERICAN CASUALTY COMPANY.

Nos. 4–89–CV–330, 4–90–CV–345, 4–90–CV–
930, 4–90–CV–973, 4–92–CV–088, 4–92–
CV–002, 4–92–CV–838, 4–92–CV–783 and
3–92–CV–604.

United States District Court,
D. Minnesota.

Aug. 24, 1993.

Thomas Resch in Nos. 4–92–CV–002, 4–92–CV–088, 4–92–CV–838.

William Sipple, pro se.

Donald Snede, pro se.

Lindsay G. Arthur, Jr., Katherine L. MacKinnon, Paula Duggan Vraa, Arthur Chapman McDonough, Kettering & Smetak, Minneapolis, MN, for Shenehon & Associates.

Timothy Desmond Kelly, Andrea Lillie Sahlin, Kelly & Berens, Minneapolis, MN, for Lenertz, Inc., Frederick G. Lenertz, Lawrence L. Lenertz, Jr.

Joe A. Walters, O'Connor & Hannan, Minneapolis, MN, for John P. Farry, Muriel Humphrey Brown in No. 4–92–CV–088.

Michael C. Flom, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for William I. Fine.

J. Thomas Vitt, David Joseph Lauth, Peter Scott Hendrixson, Dorsey & Whitney, Minneapolis, MN, Richard Gwilym Evans, Green Tree Acceptance Inc., St. Paul, MN, for Green Tree Acceptance, Inc.

Joe A. Walters, Robert Arthur Brunig, O'Connor & Hannan, Minneapolis, MN, for Muriel Humphrey Brown, John P. Farry in No. 4–90–CV–973.

Louis Joseph Speltz, Moss & Barnett, Minneapolis, MN, for Martin J. Kilroy and Thomas H. Tipton in No. 4–90–CV–973.

Louis Joseph Speltz, Steven Z. Kaplan, Wayne A. Hergott, Mitchell H. Cox, Moss & Barnett, Minneapolis, MN, for H. Vincent Hagstrum, J.E. Marlin, Arne D. Rydland, and William H. Sipple in No. 4–90–CV–973.

Louis Joseph Speltz, Steven Z. Kaplan, Wayne A. Hergott, Moss & Barnett, Minneapolis, MN, for Lloyd K. Peterson in No. 4–90–CV–973.

Stephen Carl Rathke, James M. Lockhart, Ronald L. Haskvitz, Phillip Allen Cole, Barry A. O'Neil, Lommen Nelson Cole & Stageberg, Minneapolis, MN, for Northwest Racquet.

Joseph Stuart Friedberg, Friedberg Law Office, Minneapolis, MN, for Charlotte Elizabeth Masica.

Timothy Desmond Kelly, Wendy A. Snyder, Kelly & Berens, Minneapolis, MN, for Stephen Adams.

Gary W. Hoch, Randy Alan Sharbono, Meagher & Geer, Minneapolis, MN, for American Cas. Co. of Reading, PA.

Robert J. Sheran, Carol T. Rieger, Thomas E. Glennon, Lindquist & Vennum, William Joseph Mauzy, Mauzy Law Office, Minneapolis, MN, for Harold W. Greenwood Jr.

E. Martin Stapleton, Stapleton Nolan & McCall, St. Paul, MN, for Thomas J. Resch in No. 4–89–CV–330.

J. Thomas Vitt, David Joseph Lauth, Peter Scott Hendrixson, Dorsey & Whitney, Minneapolis, MN, for Lawrence M. Coss.

John Eugene Yanish, John Paul Martin, Petersen Tews & Squires, Minneapolis, MN, Mark S. Bernstein, Barack Ferrazzano Kirschbaum & Perlman, Chicago, IL, Ray G. Rezner, Wendi Sloane Weitman, Elyse M. Tish, Meribeth Mermall, Barack Ferrazzano Kirschbaum & Perlman, Chicago, IL, April A. Breslaw, Resolution Trust Corp., Washington, DC, for Resolution Trust Corp.

Bruce A. Rasmussen, Scott R. Carlson, Rasmussen & Assoc, Minneapolis, MN, for John Barry.

William Richard Busch, Busch Law Office, St. Paul, MN, for Thomas P. FitzGibbon, Sr., John J. Kenna.

Susan Greenwood–Olson, pro se.

Dylan J. McFarland, Fred Burstein, Fred Burstein & Assoc, Minneapolis, MN, for F. William Johnson.

Robert Mampel, pro se.

Steven Z. Kaplan, Wayne A. Hergott, Moss & Barnett, Minneapolis, MN, for J.E. Marlin, Lloyd K. Peterson, H. Vincent Hagstrum, Arne D. Rydland, William H. Sipple, Martin J. Kilroy, in Nos. 4–92–CV–002, 4–92–CV–088, 3–92–CV–604.

Richard K. Nelson, pro se.

E. Martin Stapleton, Mark Murray Nolan, Stapleton Nolan & McCall, St. Paul, MN, for

Stephen Carl Rathke, Phillip Allen Cole, Lommen Nelson Cole & Stageberg, Minneapolis, MN, for Donald James Snede.

Earl Paul Gray, Gray & Malacko, St. Paul, MN, for Robert Arnold Mampel.

Joe A. Walters, Kirk Wilson Reilly, O'Connor & Hannan, Minneapolis, MN, for Muriel Humphrey Brown and John P. Farry in No. 4–90–CV–930.

Steven Z. Kaplan, Wayne A. Hergott, Mitchell H. Cox, Moss & Barnett, Minneapolis, MN, for H. Vincent Hagstrum, Martin J. Kilroy, J.E. Marlin, Lloyd K. Peterson, Arne Rydland, William H. Sipple, Thomas H. Tipton, in No. 4–90–CV–930.

Timothy Desmond Kelly, Wendy A. Snyder, Kelly & Berens, Minneapolis, MN, for Donald Zietlow in No. 4–90–CV–345.

Edward R. Soshnik, Minneapolis, MN, for Donald J. Snede.

Gerald Conrad Rummel, Rummel Law Office, St. Paul, MN, for Patrick T. Stead.

ROSENBAUM, District Judge.

## I. *Introduction*

The saga of the collapse of Midwest Federal continues. The detailed procedural history of these consolidated matters need not be recounted here. It is set forth in this Court's order dated May 19, 1993, 1993 WL 181303.[1] The parties have now filed eight additional dispositive motions. A hearing was held July 9, 1993.

Five of the eight motions were disposed of, or continued, at the hearing. The Court disposed of these motions as follows. The RTC's motion to stay was denied. The RTC's motion to strike the affirmative defenses of Shenehon & Associates ("Shenehon"), in *RTC v. Greenwood,* was taken under advisement until the time of trial. The summary judgment motions of the director defendants in *Fine v. RTC,* and Shenehon in *RTC v. Greenwood,* were denied, as the Court has determined that genuine issues

of material fact remain. American Casualty Company's summary judgment motion in the declaratory judgment actions, seeking to exclude the directors from recovering attorneys' fees, was denied. The three remaining motions are addressed, *infra.*

## *Background*

In the remaining actions, William Fine and the Resolution Trust Corporation (RTC) seek to recover losses they claim to have sustained as a result of the demise of Midwest Federal Savings and Loan Association (Midwest) in 1989. Midwest was a federally chartered mutual membership association headquartered in Minneapolis, Minnesota. It was placed in conservatorship on February 13, 1989.

On May 4, 1989, the Federal Savings and Loan Insurance Corporation ("FSLIC"), as receiver for Midwest, entered into an Acquisition Agreement ("the Agreement") with a new mutual savings and loan association, Midwest Savings Association ("Midwest Savings"). The FSLIC was appointed as receiver of Midwest Savings. Under the agreement, certain assets and liabilities of Midwest were transferred to Midwest Savings. The Agreement, however, excluded certain liabilities from this transfer. Section 2 of the Agreement provides, in pertinent part, that:

> The ACQUIRING ASSOCIATION [Midwest Savings] hereby expressly assumes and agrees to pay, perform, and discharge all of the CLOSED ASSOCIATION'S [Midwest's] liabilities ... The term "liability" as used in this section does not refer to any obligation of the CLOSED ASSOCIATION to its stockholders arising out of or related in any way to their stock holdings (including claims for damages or rescission arising from the purchase or sale of such stock holdings) or any obligation to indemnify controlling persons, directors, officers or other persons as a result of suits arising from claims of the CLOSED or ACQUIRING ASSOCIATION, and the ACQUIR-

---

1. Since this Court's Order of May 19, 1993, four of the five subordinated debenture cases have been settled. The actions remaining for trial include *Fine v. RTC,* 4–90–CV–973, and *RTC v.*

*Greenwood,* 4–92–CV–2. Three insurance declaratory judgment actions also remain, *Marlin v. ACC,* 4–92–CV–1090, *Nelson v. ACC,* 4–92–CV–838, *Kenna v. ACC,* 4–92–CV–783.

ING ASSOCIATION specifically does not assume ... any such obligations to the stockholders or for such indemnification. For the purposes of this Agreement, "stockholder" means ... subordinated debt issued by the CLOSED ASSOCIATION.

(Bernstein Aff., Ex. A § 2).

In August, 1989, The Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) became law. Pub.L. No. 101–73, 103 Stat. 183. Under the terms of that act, the RTC replaced the FSLIC as receiver of Midwest Savings.

a. *The Fine Action*

Prior to its collapse, Midwest sold a series of subordinated debentures to investors. On January 29, 1988, Midwest sold Fine a total of $1 million in subordinated debt securities, all dated January 29, 1988. (Compl. ¶ 38). On April 2, 1991, Fine filed his five count complaint (the Fine action) against the RTC, Green Tree Acceptance, Inc. ("Green Tree"), and 15 of Midwest's former director and officers.[2]

Fine claims that Green Tree aided and abetted Midwest in its violations of § 10(b) of the 1934 Securities and Exchange Act ("the Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. Fine further claims that Green Tree is secondarily liable for Midwest's actions because it is a "controlling person" under § 20 of the Act, 15 U.S.C. § 78t (Count I).[3] Fine makes parallel allegations against Green Tree under the Minnesota Securities Act, Minn.Stat. § 80A.01, *et seq.* (Count II).[4]

Midwest had originally formed Green Tree as a wholly-owned subsidiary in 1975. Green Tree is a Minnesota corporation whose primary business is the financing of manufac-

tured homes. In 1983, Midwest surrendered some of its stock to Green Tree. Green Tree sold these shares in a public offering.

Green Tree grouped its manufactured housing loans into "loan pools," which were then sold to investors. (Second Amended Compl. ¶ 23). Under this "Investor Sale Program," Green Tree continued to service the loans, forwarded the interest and principal to investors, and maintained its own "Loan Loss Reserve" to cover bad loans. Green Tree's profit from the "Investor Sale Program" was referred to as the "Loan Servicing Spread" or "Finance Income Receivable" ("FIR"). In 1985, Midwest purchased the FIR asset from Green Tree for $192 million. Green Tree continued to perform the loan servicing function on the FIR asset. The value of the FIR asset subsequently declined and, as of December, 1987, the projected shortfall was estimated at $61.7 million. (Second Amended Compl. ¶ 35).

In 1985, at the time of Midwest's purchase of the FIR asset, Midwest owned approximately 20 percent of Green Tree's stock. In 1987, Midwest sold the remainder of its Green Tree stock. (Vitt Aff., Ex. B).

Defendant Harold Greenwood, Jr., ("Greenwood") was the chief executive officer and chairman of the board of Midwest until its demise in 1989. Greenwood was the first chairman of Green Tree's board, and remained in that position until October, 1987. Greenwood left this position when Midwest sold its remaining shares of Green Tree stock. (Vitt. Aff., Ex. C; Greenwood Depo. at 167). After his departure, Greenwood continued to receive compensation from Green Tree under a "consulting agreement" contract. Under this contract, Green Tree paid Greenwood until May, 1988. It is acknowledged that Greenwood never performed any services for Green Tree pursuant

---

2. *See* 4–90–CV–973. On April 24, 1991, the RTC filed a motion to dismiss Fine's claims. By order dated July 2, 1991, the Honorable Robert G. Renner, United States District Judge, dismissed the RTC from the Fine action.

3. On July 2, 1991, Judge Renner denied Green Tree's Rule 12(b)(6) motion to dismiss Counts I and II, but granted the motion as to Counts III, IV, and V. (Docket # 32).

4. The parties have stipulated to dismissal of these claims.

to the consulting agreement, nor were any services requested. (Vitt. Aff., Ex. C; Greenwood Depo. at 173).

After Greenwood's departure, Lawrence Coss became the president and chief executive officer of Green Tree. Coss sat on Midwest's board until May, 1986.

At the time of the FIR purchase, several Midwest officers raised concerns over the manner in which the FIR transaction was conducted. In 1985, Donald Snede, chief financial officer, recommended that, rather than using Green Tree's accountants and lawyers, Midwest should supply its own. (Wittrock Aff., Ex. S; Snede Depo. at 279). David Kuebelbeck, then in-house general counsel for Midwest, testified that the loans purchased from Green Tree were neither acquired at market rates nor acquired in the manner Midwest would typically use to purchase loans from another seller. (Wittrock Aff., Ex. M; Kuebelbeck Depo, 394–95, 402–03). In September, 1988, Midwest sued Green Tree over the FIR transaction, claiming fraud, breach of warranty, and breach of contract.[5]

Green Tree seeks summary judgment on Fine's claims that it had control over Midwest's affairs, and aided and abetted Midwest's securities law violations.

### The RTC Action

On January 6, 1992, the RTC filed a separate action against Shenehon & Associates,[6]

and 16 of Midwest's former directors and officers,[7] claiming breach of fiduciary duty, negligence, gross negligence, and unjust enrichment.[8] Defendants Kenna, FitzGibbon, Sipple, and Snede asserted counterclaims against the RTC seeking indemnification for damages, costs, and attorneys' fees which may be incurred in the RTC action.[9] The RTC now moves for summary judgment dismissing the indemnification counterclaims.

### The Declaratory Judgment Actions

On September 4, 1992, officers/directors Richard K. Nelson and Thomas Resch, along with the RTC, filed their declaratory judgment action against American Casualty Company ("ACC") and the previous insurer, MGIC Indemnity Corporation (MGIC).[10] All claims raised by the plaintiffs in the *Nelson* action relate to coverage for any judgment or fees incurred by the directors in the case of *RTC v. Greenwood.*

On August 20, 1992, outside directors John J. Kenna and Thomas FitzGibbon, Sr., filed their declaratory judgment action against ACC.[11] These outside directors seek a declaration that ACC is obligated to defend, indemnify, and pay attorneys' fees in both the subordinated debenture cases and the *RTC v. Greenwood* action.

---

**5.** *Midwest Savings Association, F.A. v. Green Tree Acceptance, Inc., et al.,* U.S.D.C., D.Minn., 3–88–CV–669.

**6.** Shenehon & Associates is a real estate appraisal firm located in Minneapolis, Minnesota. The RTC asserts claims against Shenehon for professional malpractice, and aiding and abetting Midwest directors' breach of fiduciary duty. These claims are premised upon two appraisals Shenehon prepared concerning two real estate properties located in Shakopee, Minnesota. Both appraisals were prepared at the request of, and at the direction of, Scottland Companies, a real estate developer located in Scott County, Minnesota.

**7.** The named defendants include: Harold Greenwood, Jr., John Barry, Lawrence M. Coss, Thomas P. FitzGibbon, Sr., Susan Greenwood–Olson, F. William Johnson, John J. Kenna, Robert Mampel, J.E. Marlin, Charlotte E. Masica, Richard K. Nelson, Lloyd K. Peterson, Thomas Resch, William Sipple, Donald Snede, and Shenehon &

Associates. The parties stipulated to the dismissal of Lawrence M. Coss on May 4, 1992. *See* Judgment entered May 4, 1992, Docket # 70, 4–92–CV–2. Default was entered against Charlotte Masica on June 19, 1992. On October 15, 1992, the RTC stipulated to dismissal of Counts I, II, and III against Donald Snede. Docket # 132, 4–92–CV–2.

**8.** *See* 4–92–CV–2. This lawsuit was assigned to the Honorable Diana E. Murphy, United States District Judge.

**9.** In an order dated July 21, 1992, Judge Murphy dismissed the defendant directors' affirmative defense seeking indemnification from the RTC. Relying upon *Adams v. Resolution Trust Corp.,* 927 F.2d 348 (8th Cir.1991), Judge Murphy struck this defense on the grounds of prudential mootness, finding that Midwest lacked assets with which to indemnify.

**10.** *See* 4–92–CV–838.

**11.** *See* 4–92–CV–783.

On September 3, 1992, outside directors J.E. Marlin, Lloyd K. Peterson, H. Vincent Hagstrum, Arne Rydland, William H. Sipple, and Martin J. Kilroy filed their declaratory judgment action against ACC.[12] These outside directors seek a declaration that ACC is obligated to defend, indemnify, and pay their attorneys' fees in both the subordinated debenture litigation and in the *RTC v. Greenwood* action.

On May 19, 1993, this Court ruled that the RTC could not claim the proceeds of the 1988 Directors and Officers policy ("the D & O policy") under the terms of that policy's regulatory exclusion. In this motion, ACC seeks summary judgment in all three declaratory judgment actions based on this Court's May 19, 1993 ruling.

### Analysis

The familiar summary judgment standard is applicable to all three motions before the Court. Summary judgment is appropriate when there is no dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The question is whether factual issues exist which may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *Id.* at 248–49, 106 S.Ct. at 2510. If the opposing party fails to carry that burden, or fails to make a sufficient showing to establish the existence of an element essential to its case and upon which that party will bear the burden at trial, summary judgment should be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268 (8th Cir.1988). In reviewing the evidence, the Court must view the facts in the light most favorable to the non-moving party, and give that party the benefit of all reasonable inferences to be drawn from the facts. *St. Paul Fire & Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695, 699 (8th Cir.1992).

### RTC's Motion to Dismiss Directors' Counterclaims

The RTC moves for summary judgment on the directors' counterclaims for indemnification, pursuant to 12 C.F.R. § 545.121. This regulation provides, in pertinent part:

> A federal savings association shall indemnify its directors ... in accordance with the following requirements:

> .    .    .    .    .

> (b) *General.* Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an action is brought ... because that person is or was a director ... of the association.

12 C.F.R. § 545.121 (1993).

Paragraph (g) provides that the indemnification provided in paragraph (b) is "subject to and qualified by 12 U.S.C. § 1821(k)." Section 1821(k) provides, in pertinent part:

> A director ... of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the [Resolution Trust] Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation ... acting as ... receiver of such institution.

12 U.S.C. § 1821(k).

Paragraph (c) sets forth the procedural requirements for a party seeking indemnification. "Mandatory" indemnification is required only if the director has received "[f]inal judgment on the merits in his or her favor...." 12 C.F.R. § 545.121(c)(1). If final judgment is entered against the directors, or the case is concluded other than on the merits, "permissive" indemnification is

---

12. *See* 4–92–CV–1090.

available. Such indemnification is available "if a majority of the disinterested directors ... determine that" the director seeking indemnity "was acting in good faith within the scope of his or her employment ... for a purpose he or she could reasonably have believed under the circumstances was in the best interest of the savings association." 12 C.F.R. § 545.121(c)(2)(i)(ii)(iii).

In the case of both mandatory and permissive indemnification, the association must give the Office of Thrift Supervision 60 days notice of its intent to indemnify. 12 C.F.R. § 545.121(c). The notice must "state the facts on which the action arose, the terms of any settlement, and any disposition of the action by a court." *Id.*

The RTC denies, on several alternative grounds, that it must provide indemnification. It contends that any obligation which Midwest may have had to indemnify the directors was disavowed by Midwest Savings under § 2 of the Acquisition Agreement. The RTC, therefore, contends that Midwest is the only party to whom the directors may look, and the RTC is simply the wrong party. The RTC argues that, because Midwest has no assets from which to provide indemnification, the counterclaims are barred by the doctrine of prudential mootness. *See Adams v. RTC*, 927 F.2d 348, 354 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991). In the alternative, the RTC contends that the defendants have failed to comply with the procedural requirements for indemnification and have failed to exhaust their administrative remedies under FIRREA, 12 U.S.C. § 1821(d)(5)–(14). The directors respond that if § 2 of the Acquisition Agreement is considered valid, it does not bar Midwest Savings's obligation to indemnify the directors in *Fine v. RTC.* The directors concede that their counterclaims

are not ripe because final judgment has not been entered, but oppose dismissal of those counterclaims. The directors also oppose application of FIRREA's exhaustion requirements.

■■■■ The Court finds that the RTC is entitled to summary judgment on the indemnification counterclaims by operation of § 2 of the Acquisition Agreement. These counterclaims are specifically asserted in the *RTC v. Greenwood* case, against the RTC in its capacity as receiver of Midwest Savings. *See, e.g.,* Answer and Counterclaim of Thomas FitzGibbon at ¶ 27.[13] Section 2 of the Acquisition Agreement specifically excludes "any obligation of the CLOSED ASSOCIATION [Midwest] to indemnify controlling persons, directors, officers or other persons as a result of suits arising from claims of the CLOSED or ACQUIRING ASSOCIATION...." The Court finds that Midwest Savings declined to assume Midwest's obligation to indemnify the directors.[14]

The Court further finds that § 2 of the Acquisition Agreement does not contravene the mandatory indemnification requirements of § 545.121. To read the regulation as the directors suggest would lead to the absurd result that the RTC could succeed in a suit against the perfidious directors, and then recover from itself. The regulation was apparently created for the legitimate purpose of protecting the faithful director who is sued by a third party.[15]

This Court further concludes that the directors' indemnification counterclaims are barred by the clear language of the regulation itself, as supplemented by FIRREA. Paragraph (b) of § 545.121, which provides for mandatory indemnification, is subject to paragraph (g). Paragraph (g) provides that indemnification by the savings association is

---

13. The Court expresses no opinion as to the defendant directors' indemnification counterclaims or affirmative defenses asserted in the subordinated debenture action, *Fine v. RTC.*

14. The Court agrees with the RTC that, even if the counterclaims were asserted against Midwest, the claims would fail under the doctrine of prudential mootness, as Midwest lacks assets

with which to satisfy such a claim. *Adams v. RTC*, 927 F.2d 348, 354 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991).

15. The Court's research has revealed few cases touching upon indemnification under § 545.121. *See Harris v. Resolution Trust Corp.*, 939 F.2d 926 (11th Cir.1991); *Atlantic Permanent Federal*

subject to and qualified by 12 U.S.C. § 1821(k). Section 1821(k) provides for personal liability on the part of the directors in any civil action by the RTC acting as a receiver of an insured depository institution.

Reading these provisions together, when the RTC sues the directors for their wrongful conduct against the institution, indemnification is simply unavailable. Accordingly, the RTC's motion for summary judgment on the director defendants' indemnification counterclaims is granted.

### Green Tree Motion in Fine v. RTC

Fine claims that Green Tree is secondarily liable for Midwest's violations of section 10(b) of the 1934 Act, 15 U.S.C. § 78j. Fine sets forth theories of "aiding and abetting" and "controlling person" liability. Green Tree moves for summary judgment on both claims.

#### a. Aiding and Abetting Liability

■ To establish aiding and abetting liability, Fine must demonstrate:

(1) the existence of a securities law violation by the primary party [Midwest];

(2) "knowledge" of the violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986); *Camp v. Sav. & Loan Ass'n*, 839 F.2d 212 (4th Cir.1988); *Waldoboro Bank v. American Cas. Co. of Reading, Pa.*, 775 F.Supp. 432 (D.Me.1991); *RTC v. Nicholson*, No. 3–88–0163 (E.D.Tenn.1991) (memorandum report and recommendation issued by United States Magistrate Judge Robert Murrian, adopted by United States District Judge James H. Jarvis).

Only the *Nicholson* opinion addresses indemnification by the RTC in an action by the RTC against the directors of a failed institution. The remaining cases involve claims asserted by third parties against the directors, who then sought indemnification from the institution or its insurer.

In *Nicholson*, the magistrate found that the director's indemnification claim was not yet ripe.

*Dema*, 948 F.2d 455, 459 (8th Cir.1991).[16] "The factors—particularly the second and third—are not to be considered in isolation, but should be considered relative to one another ... 'where there is a minimal showing of substantial assistance, a greater showing of scienter is required.'" *Metge*, 762 F.2d at 624 (quoting *Stokes v. Lokken*, 644 F.2d 779, 782–83 (8th Cir.1981)).

■ The "knowledge" required to establish liability "remains flexible and must be decided on a case-by-case basis." *Camp v. Dema*, 948 F.2d at 459. One who engages in atypical business transactions, or actions which lack business justification, may be found liable as an aider and abettor with a minimal showing of knowledge of the primary securities law violation. *Id.* "Recklessness satisfies the knowledge requirement where the defendant owes a duty of disclosure to the plaintiff." *Id.*

■ To prove "substantial assistance," Fine bears "the burden of showing that the secondary party proximately caused the violation." *Metge*, 762 F.2d at 624. "[I]f the aider and abettor owes the plaintiff an independent duty to act or to disclose, inaction can be a proper basis for liability under the substantial assistance test." *Id.* at 625. But absent such a duty, an aider-abettor case predicated on inaction must meet a high standard of intent—"inaction must be accompanied by actual knowledge of the underlying fraud and intent to aid and abet a wrongful act." *Id.*

The magistrate stated, in dicta, that Nicholson would be entitled to mandatory indemnification under § 545.121 if judgment were entered in his favor. The magistrate ignored the RTC's argument that indemnification in a suit by the RTC would lead to the absurd result of absolute immunity for the sued director. *Nicholson*, slip op. at 7. This Court declines to adopt the *Nicholson* dicta.

**16.** For the purposes of this motion, the Court presumes a securities law violation by Midwest as the primary party. *See Camp v. Dema*, 948 F.2d 455, 459 (8th Cir.1991); *K & S Partnership v. Continental Bank, N.A.*, 952 F.2d 971, 977 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2993, 120 L.Ed.2d 870 (1992).

■ Green Tree contends that it had only passing knowledge of Midwest's subordinated debenture sale to Fine, and provided no assistance in aid of Midwest's primary violation.[17] Fine asserts that Green Tree had knowledge of Midwest's primary violation[18] through Greenwood, who sat on the boards of both entities. In Fine's view, any information known to Greenwood must be imputed to Green Tree. Fine further claims that, at the time of the subordinated debenture sale, Green Tree failed to disclose that the FIR asset was seriously impaired when Midwest was representing the FIR asset's value at $207,592,000. (Amended Compl. ¶ 42). Fine contends that Green Tree's inaction in this regard is sufficient to fulfill the substantial assistance requirement.

The Court finds that Fine has failed to produce sufficient evidence of Green Tree's actual knowledge of the underlying fraud and concomitant intent to aid and abet a wrongful act to withstand summary judgment. Despite pages of interrogatories and hours of depositions, there is insufficient evidence to justify a trial of the issue. The Court determines that no jury could find for the plaintiffs on this issue.

Green Tree does not dispute that it knew of Midwest's subordinated debenture offering. Fine, however, has failed to produce any evidence demonstrating that an employee, officer, or director of Green Tree had actual knowledge of any misrepresentations contained in, or omissions made from, the debenture offering documents. Furthermore, Greenwood's knowledge of the violations cannot be imputed to Green Tree. The sale to Fine took place in January, 1988. Although Greenwood was under contract to Green Tree as a consultant, and received a salary until May, 1988, Greenwood did no work for the company, nor was any requested. There is no showing whatsoever that Greenwood's continuing compensation was anything other than the tail end of a buy-out transaction.

Although the 1985 FIR transaction may, in some way, be tangentially related to the 1988 subordinated debenture sale, there is no evidence that Green Tree failed—or was required—to disclose the status of the FIR asset to Fine. This fact does not meet the requisite showing of scienter. Green Tree's motion for summary judgment on the plaintiff's aiding and abetting claim is granted.

b. *Controlling Person Liability*

■ To prevail on his claim that Green Tree was a "controlling person," Fine:

> Must establish, first, that the defendant ... actually participated in (*i.e., exercised* control over) the operations of the corporation in general; then he must prove that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated, but he need not provide that this later power was exercised.

*Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir.1985) (citations omitted) (emphasis in

---

**17.** Green Tree learned of the subordinated debenture sale through Midwest Officer Donald Snede, who proposed to Green Tree that it purchase some of the debentures. (Wittrock Aff., Ex. S; Snede Depo. at 522–25).

**18.** Although atypical business transactions, or actions which lack business justification, may in *some cases permit a plaintiff to proceed with* only a minimal showing of knowledge, the Court finds that exception inapplicable here. Those cases which have permitted a minimal showing of knowledge generally involved atypical business transactions directly related to the primary violation. In those cases, the aider and abettor engaged in atypical transactions which perpetuated the primary violator's viability to continue in its wrongful acts. *See FDIC v. First Interstate Bank of Des Moines, N.A.,* 885 F.2d 423, 426–428 (8th Cir.1989); *Metge v. Baehler,* 762 F.2d 621, 626 (8th Cir.1985). Furthermore, the aider-abettor generally receives some benefit from perpetuating the existence of the primary violator's business. *See, e.g., K & S Partnership,* 952 F.2d at 978; *Metge,* 762 F.2d at 629.

Here, it was Midwest, not Green Tree, which engaged in an atypical transaction. Fine does not contend, nor is there evidence, that Green Tree engaged in atypical transactions at the time of the subordinated debenture sale which benefited Green Tree and perpetuated Midwest's viability.

original).[19]

Fine contends that Green Tree's control over Midwest is reflected in the FIR transaction. In his view, this transaction was clearly disadvantageous to Midwest. He further asserts that Green Tree controlled Greenwood by virtue of the continuing compensation agreement. Fine also argues that Green Tree's control over Midwest was manifested in the $1.5 million bonus Midwest paid to Green Tree's CEO, Lawrence Coss, at the time of the 1985 FIR transaction. Fine further notes that Midwest and Green Tree each used the same attorneys and public accounting firm. The plaintiff argues that this evidence supports an inference that Green Tree had the power to control the debenture sale, even if it did not actually exercise that power.

The Court finds that the plaintiff has failed to carry his burden of producing probative evidence that Green Tree actually exercised control over the operations of Midwest in general as of January, 1988. There is no evidence that the FIR transaction was anything other than a deal which was advantageous to one side, and disadvantageous to the other. Furthermore, there is no showing that the timing of Greenwood's compensation, which continued until May, 1988, in conjunction with the Fine subordinated debenture purchase in January, 1988, was anything other than happenstance. *See Metge*, 762 F.2d at 632. Mere speculation that Green Tree exercised control over Midwest as of January, 1988, is insufficient to withstand Green Tree's summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986). Because Fine has failed to provide sufficient evidence concerning an essential element of controlling person liability, summary judgment must be entered in favor of Green Tree. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

19. Controlling person liability is predicated upon § 15 of the Securities Act of 1933, which provides, in pertinent part:
    Every person who, by or through stock ownership, agency or otherwise ... controls any person liable under ... this title, shall also be

*ACC's Motion for Summary Judgment in the Declaratory Judgment Actions*

ACC moves for summary judgment in all three declaratory judgment actions based upon this Court's order of May 19, 1993. In that order, this Court found that the RTC was not entitled to claim the proceeds of the D & O policy issued by ACC to Midwest by virtue of the "Regulatory" exclusion contained in that policy. *Northwest Racquet Swim & Health Clubs, Inc. v. Greenwood*, U.S.D.C., D.Minn. 4–90–CV–930, slip op. at 20, 1993 WL 181303 (May 19, 1993). ACC contends that resolution of the RTC's right to coverage disposes of the issues raised in all three declaratory judgment actions. ACC is incorrect.

This Court now determines, however, that its previous order completely disposes of the issues raised in *Nelson v. ACC*, 4–92–CV–838. The *Nelson* case seeks declarations related to coverage in the *RTC v. Greenwood* case. Because this Court has already determined that the RTC may not reach the proceeds of the D & O policy, *Nelson* is dismissed with prejudice. To the extent that the plaintiffs in *Marlin v. ACC*, 4–92–CV–1090, and *Kenna v. ACC*, 4–92–CV–783, seek coverage for the claims asserted by the RTC in *RTC v. Greenwood*, those claims are similarly dismissed. However, ACC's motion for summary judgment is denied to the extent that the plaintiffs in *Marlin* and *Kenna* seek declarations of coverage for the claims asserted in *Fine v. RTC*.

Accordingly, based upon the files, records, and proceedings herein, for the reasons set forth at the hearing held July 9, 1993, and for the reasons set forth above, IT IS ORDERED that:

1. The RTC's motion to stay these consolidated cases is denied.

2. The RTC's motion to strike Shenehon & Associates' affirmative defenses in the case of *RTC v. Greenwood*, 4–92–CV–2, is taken under advisement until the time of trial.

liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.
15 U.S.C. § 77o.

3. The RTC's motion to dismiss the directors' indemnification counterclaims in *RTC v. Greenwood*, 4–92–CV–2, is granted.

4. ACC's motion for summary judgment in *Nelson v. ACC*, 4–92–CV–838, is granted. *Nelson v. ACC*, No. 4–92–CV–838, is hereby dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

5. ACC's motion for summary judgment in *Marlin v. ACC*, 4–92–CV–1090, and *Kenna v. ACC*, 4–92–CV–783, is granted in part and denied in part. Those claims seeking a declaration for coverage in the case of *RTC v. Greenwood*, 4–92–CV–2, are dismissed with prejudice. To the extent that the directors seek coverage for the claims asserted in *Fine v. RTC*, 4–90–CV–973, ACC's motion for summary judgment is denied.

6. ACC's motion for summary judgment to exclude the directors from recovering attorneys' fees in the declaratory judgment actions is denied. ACC's motion for reconsideration of this issue, filed July 13, 1993, is also denied.

7. The defendant directors' motion for summary judgment in *Fine v. RTC*, 4–90–CV–973, is denied.

8. Defendant Green Tree's motion for summary judgment in *Fine v. RTC*, 4–90–CV–973, is granted. Count I of plaintiff Fine's complaint is dismissed with prejudice as to defendant Green Tree. Count II is dismissed as to defendant Green Tree by stipulation of the parties.

9. Shenehon & Associates's motion for summary judgment in *RTC v. Greenwood*, 4–92–CV–2, is denied.