_____

No. 95-1957
_____

Vickie L. Klimstra,                  *
                                     *

       Appellant,           *
                                     *

    v.                   *
                                     *  Appeal from the United States

Leroy Granstrom, individually;  *  District Court for the District

Granstrom Insurance Agency;    *  of Minnesota.

State Farm Auto Insurance      *

Company, an Illinois           *

corporation licensed to do    *

business in Minnesota,       *
                                     *

       Appellees.           *

_____

Submitted:  November 16, 1995

Filed:  September 11, 1996
_____

Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Vickie Klimstra appeals the adverse grant of summary judgment by the District Court[1] in her claim for uninsured motorist benefits against State Farm Auto Insurance Company (State Farm) and LeRoy Granstrom, individually, and as the Granstrom Insurance Agency (herein referred to collectively as Granstrom).  We affirm.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

This case arises out of a "miss-and-run" accident on August 4, 1991.[2] The facts of this case are provided in detail in the opinion of the District Court. See Klimstra v. State Farm Auto. Ins. Co., 891 F. Supp. 1329 (D. Minn. 1995). The following is a summary of the facts material to the issues raised on appeal. Klimstra alleged that as she was driving on a Wisconsin highway, a car came toward her in her lane; to avoid a head-on collision, she turned off the highway. Although the unidentified car did not make physical contact with Klimstra's car, she was thrown from her car and pinned underneath it. She was hospitalized and received medical care for third and fourth degree burns. At the time of the accident, Klimstra was a resident of Wisconsin, and had obtained her automobile insurance in Wisconsin through the Charles Smader Agency, an exclusive State Farm automobile insurance agency located in LaCrosse, Wisconsin. While still hospitalized, she filed a claim with State Farm to obtain uninsured motorist (UM) benefits for the bodily injuries she sustained in the car accident. State Farm paid Klimstra $25,000 under the medical payments coverage in her Wisconsin policy, but refused to provide her with UM benefits.

Until May 1991 Klimstra had resided with her parents in Minnesota, and had been covered by State Farm automobile insurance policies obtained through the Granstrom Agency in Anoka, Minnesota. Klimstra's last extension of her Minnesota policy covered the period between February 11 and August 11, 1991. The Minnesota policy contained the following provision:

---

[2]"Miss and run" describes an accident in which an unidentified motor vehicle causes injury to another motor vehicle or its occupants, but does not make physical contact with the other vehicle.

<u>Change of Residence</u>

When the change of location is from one state to another and you are a risk still acceptable to us at the time you notify us of the change, we shall replace this policy with the policy form currently in use in the new state of garaging. The word "state" means one of the United States of America.

In May 1991, Klimstra contacted Barb Daly, a secretary at the Granstrom Agency in Minnesota, and informed her that she might be moving to Wisconsin. Daly informed Klimstra that the Granstrom Agency was not authorized to write insurance policies in Wisconsin and did not have access to Wisconsin insurance rates, and advised Klimstra to find an agent in Wisconsin. Daly further informed Klimstra, and Klimstra understood, that Wisconsin's laws and insurance requirements might differ from Minnesota's. Daly then sent Klimstra an automobile policy computer printout listing Minnesota premium and policy limits to use in comparing Wisconsin rates for similar coverages. The printout did not contain the terms or conditions for the different coverages. Daly asked Klimstra to keep the Granstrom Agency informed about her decision to relocate. Klimstra did not contact the Granstrom Agency again concerning her move or her automobile policy.

Later in May 1991, Klimstra moved to Wisconsin. In June, she contacted the Smader Agency in Lacrosse. The Smader Agency is not affiliated in any way with the Granstrom Agency. Klimstra met in person with Nancy Gregerson of the Smader Agency, and told her that she wanted the same coverage that she had under her Minnesota policy with State Farm. Klimstra showed Gregerson the computer printout that Daly had given to her, but Klimstra did not bring her Minnesota policy with her containing the specific terms and conditions of her coverage. On June 5, 1991, Gregerson prepared an insurance application, and checked the box marked transfer and left the boxes marked new and reinsurance blank. Gregerson advised Klimstra that Wisconsin requires insureds to purchase medical

payment coverage for medical expense benefits rather than the personal injury protection coverage offered in Minnesota. Klimstra selected $25,000 in medical payment insurance. Gregerson also informed Klimstra that because her Wisconsin premium was $90.00 lower than her Minnesota premium, she could purchase $100,000 of UM coverage, instead of the $25,000 UM coverage that she had under her Minnesota policy.

Gregerson prepared an insurance application and binder agreement listing the coverages that Klimstra had selected. The application was signed by Klimstra and the Smader Agency with coverage bound effective June 11, 1991. Klimstra applied her unearned premium from the Minnesota policy toward payment of the initial premium on her Wisconsin policy. Klimstra understood that her Minnesota policy would expire, and that her Wisconsin policy would become effective as of June 11, 1991. The Smader Agency sent Klimstra's Wisconsin policy to her along with insurance cards and a premium notice. The notice required Klimstra to pay her Wisconsin premium by August 11, 1991; following her accident she paid the premium from the hospital on August 9, 1991.

The dispute in this case centers on a difference in UM coverage in Minnesota and Wisconsin for a hit-and-run accident. With respect to UM coverage, Klimstra's Minnesota policy provided:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
>
> Uninsured Motor Vehicle--means:
>
> . . . .
>
> 2. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which was the proximate cause of bodily injury to an insured.

Minnesota State Farm Insurance Policy, Section III, Uninsured Motor Vehicle Coverage, at 13-14, <u>reprinted in</u> Appellant's Appendix at 48-49.

Klimstra's Wisconsin policy provided the following UM coverage:

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

Uninsured Motor Vehicle--means:

. . . .

2.  a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:

a.  the insured or

b.  the vehicle the insured is occupying and causes bodily injury to the insured.

Wisconsin State Farm Insurance Policy, Section III, Uninsured Motor Vehicle Coverage, at 14, <u>reprinted in</u> Appellant's Appendix at 71.

Minnesota courts have interpreted the term hit-and-run broadly to encompass a miss-and-run accident where there is no physical contact between the two vehicles, while Wisconsin courts have interpreted hit-and-run narrowly to mean that physical contact is required. Neither the Granstrom Agency nor the Smader Agency informed Klimstra of any differences in UM coverage in the Minnesota and Wisconsin policies.

After State Farm refused UM coverage for the miss-and-run accident, Klimstra filed suit against State Farm and Granstrom in Minnesota state court on theories of breach of contract and negligence. State Farm removed this action to federal court on the basis of diversity jurisdiction. The parties filed cross-motions

for summary judgment.  In her motion for summary judgment, Klimstra argued that (1) the Wisconsin State Farm policy containing UM coverage should insure the miss-and-run accident; (2) Granstrom and State Farm were negligent for failing to inform her when she moved from Minnesota to Wisconsin of the reduced coverage under the Wisconsin policy; (3) Minnesota law governed the interpretation of the miss-and-run coverage in the Wisconsin insurance policy; (4) the Minnesota policy was still in effect with the higher limits chosen by Klimstra in her Wisconsin policy; or (5) alternatively, the Minnesota policy containing miss-and-run UM coverage was still in effect with the policy limits established in Minnesota.  In their own separate motions for summary judgment, defendants responded that under Wisconsin law, the UM coverage does not include miss-and-run accidents. Further, they contended that Granstrom had no duty to counsel Klimstra regarding differences in coverage under the Wisconsin policy.  In addition, defendants argued that Klimstra's Minnesota policy terminated on June 11, 1991 when she bought her new Wisconsin policy, and that Wisconsin law governed the interpretation of the Wisconsin policy.

The District Court granted summary judgment to State Farm and Granstrom.  The District Court held (1) there is no question of material fact as to whether Klimstra's Wisconsin insurance policy was in effect at the time of her accident; (2) Wisconsin law controls the interpretation of Klimstra's Wisconsin policy; (3) the Wisconsin policy did not cover miss-and-run accidents; (4) Granstrom and State Farm did not have a legal duty to explain to Klimstra that her Wisconsin policy did not cover miss-and-run accidents; (5) an insurer must give notice to an insured only where there is a material change at the time of its renewal or when an endorsement is added; (6) State Farm and Granstrom did not unilaterally reduce Klimstra's UM coverage; and (7) there are no grounds for rewriting the Wisconsin policy to provide Klimstra with miss-and-run coverage.

Klimstra challenges the District Court's grant of summary judgment to the defendants on the grounds that (1) a material question of fact remains as to when Klimstra received the Wisconsin policy; (2) Minnesota and Wisconsin uninsured motorist laws are not in conflict, and even if there is a conflict, Minnesota law should apply to the interpretation of the Wisconsin policy; and (3) alternatively, the District Court misapplied the rule of <u>Canadian Universal Insurance Co. v. Fire Watch, Inc.</u>, 258 N.W.2d 570 (Minn. 1977) (holding insurer's failure to provide insured written explanation that endorsement reduced coverage renders endorsement void and restores original policy terms), and therefore the Wisconsin policy should be rewritten to include miss-and-run coverage.

## II.

We review <u>de novo</u> the decision to grant a summary judgment motion. <u>Brodnicki v. City of Omaha</u>, 75 F.3d 1261, 1264 (8th Cir. 1996), <u>petition for cert. filed</u>, 65 U.S.L.W. 3086 (U.S. July 23, 1996) (No. 96-129). We will affirm if the record shows there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. <u>Id.</u>; <u>see</u> <u>also</u> Fed. R. Civ. P. 56(c).

## III.

As a preliminary matter, we must address Klimstra's contention that summary judgment should not have been granted to defendants because a genuine issue of material fact remains in dispute. Klimstra argues there is a fact issue as to the date she received the Wisconsin automobile policy. Klimstra contends she may not have received her Wisconsin policy before the accident on August 4, 1991. Although Klimstra raises a dispute as to when she physically received her policy, Klimstra has not demonstrated why this factual dispute is materially relevant.

-7-

Klimstra does not articulate the relevancy of the physical receipt of her policy. Perhaps she means to suggest that if she had not received her Wisconsin policy then her Minnesota policy was still in effect. It is undisputed that Klimstra applied for her Wisconsin policy on June 5, 1991, with an effective date of June 11, 1991, and that her premium refund from the Minnesota policy was applied to pay part of the first premium on her Wisconsin policy. Whether Klimstra physically received the policy in June, as State Farm argues, or sometime after her accident in August, as Klimstra argues, her Wisconsin coverage became effective as a matter of law on June 11, 1991, and her Minnesota coverage terminated on the same date. As a matter of law, when Klimstra's accident occurred on August 4, 1991, she was insured under the Wisconsin policy only.

Having reviewed the record, we conclude the District Court correctly determined there is no genuine issue of material fact remaining in dispute.

## IV.

Klimstra next argues that the UM coverage provided by her Wisconsin policy should be read as insuring her miss-and-run accident. Klimstra contends that the District Court improperly found that a conflict of law existed between Minnesota and Wisconsin law. She asserts that because Wisconsin law permits insurers to provide more than the minimum coverage required by statute, the two states' laws do not conflict. We disagree. We conclude that the District Court correctly determined that the two states' laws are in conflict because application of Minnesota law to Klimstra's policy results in coverage for the miss-and-run accident, while application of Wisconsin law to the policy does not.

The Minnesota Supreme Court has ruled that insurance policy provisions that require physical contact as a precondition of hit-and-run coverage impermissibly restrict the coverage intended by the Minnesota uninsured motorist statute. Halseth v. State Farm Mut. Auto. Ins. Co., 268 N.W.2d 730, 732-33 (Minn. 1978). Therefore under policies governed by Minnesota law there can be no requirement of physical contact between the uninsured motorist and the insured motorist for UM coverage to apply.

The Wisconsin Supreme Court, on the other hand, has held that physical contact between the insured and the unidentified vehicle is a prerequisite for hit-and-run UM coverage. Hayne v. Progressive N. Ins. Co., 339 N.W.2d 588, 591 (Wis. 1983).

Nonetheless, Klimstra argues that Minnesota and Wisconsin laws are not in conflict because Wisconsin does not preclude more than minimum coverage in an insurance policy. This argument misses the mark. Klimstra's Wisconsin policy covers damages for bodily injury arising from "a hit-and-run land motor vehicle whose owner or driver remains unknown and which strikes: the insured or the vehicle the insured is occupying and causes bodily injury to the insured." Wisconsin State Farm Insurance Policy, at 14, reprinted in Appellant's Appendix at 71 (emphasis added). Application of Wisconsin law to the UM provision in Klimstra's Wisconsin policy therefore results in no coverage for Klimstra's miss-and-run accident. We hold that the District Court correctly determined that Minnesota law and Wisconsin law are in actual conflict with respect to interpretation of the UM provision in the Wisconsin policy.

Having determined that an actual conflict exists, we next turn to Minnesota's choice-of-law rules. Minnesota courts employ Professor Leflar's choice-influencing factors: predictability of results; maintenance of interstate order; simplification of the judicial task; advancement of the forum's governmental interest;

and application of the better rule of law.  See Milkovich v. Saari, 203 N.W.2d 408, 412-13 (Minn. 1973).  Klimstra argues that even if an actual conflict exists, the choice-influencing factors favor application of Minnesota law to the Wisconsin policy.  We are unpersuaded.  The choice-influencing factors overwhelmingly favor application of Wisconsin law to the interpretation of the Wisconsin policy.  Klimstra is a Wisconsin resident; she is employed in Wisconsin; her accident occurred on a Wisconsin highway; and the insurance policy at issue is a Wisconsin insurance contract sold by a Wisconsin insurance agent.  The District Court carefully applied the Leflar factors and did not err in its decision to apply Wisconsin law.

**V.**

Klimstra argues that even if (as we now have held) Wisconsin law governs the interpretation of her Wisconsin policy, the Wisconsin policy should be rewritten to conform to Minnesota law on the ground that when she moved to Wisconsin and applied for a Wisconsin policy no one told her that she would not have the miss-and-run coverage she previously had under her Minnesota policy.  She contends that under Fire Watch, 258 N.W.2d at 575, Granstrom and State Farm had a contractual duty to inform her in writing that the Wisconsin policy did not contain miss-and-run coverage, and that in failing to do so the defendants materially reduced her coverage under the Wisconsin policy without her assent.[3]  Therefore, Klimstra contends that the Wisconsin policy should be

---

[3]We agree with the District Court that the above choice-of-law analysis favoring application of Wisconsin law to Klimstra's Wisconsin insurance policy does not apply to the issue of whether State Farm and Granstrom had an obligation to notify Klimstra that her Wisconsin policy did not contain miss-and-run coverage.  We analyze this issue under Minnesota law because Granstrom is a Minnesota-based insurance agent, his insurance relationship with Klimstra took place in Minnesota, and prior to moving to Wisconsin Klimstra was insured by State Farm under policies issued in Minnesota.

-10-

rewritten to restore the original miss-and-run coverage provided for in the Minnesota policy. Her argument is without merit.

Klimstra's reliance on Fire Watch is misplaced. The Fire Watch rule applies when, by renewal of a policy or by an endorsement to an existing policy, an insurer substantially reduces the prior insurance coverage without notifying the insured in writing of such a change. Id. In that situation, the endorsement or alteration is void and the original policy terms are restored. Id. In Fire Watch, the insured was in the business of selling, distributing, and servicing fire protection equipment. Fire Watch purchased an insurance policy from Canadian Universal Insurance Company (Canadian) to cover completed operations and products liability. A fire occurred at a building in which Fire Watch had installed equipment. When Fire Watch's equipment failed to function, Fire Watch was sued. The defense of this action was referred to Canadian, which brought an action for a declaratory judgment that the loss in question was excluded from coverage under the insurance policy because the language of a subsequent endorsement drafted by Canadian and sent to Fire Watch denied coverage for both negligent installation and manufacture. Id. at 571. The Minnesota Supreme Court determined that the endorsement substantially reduced the insurance coverage afforded Fire Watch under the original policy and therefore concluded that the endorsement was void. Consequently, the court in Fire Watch restored the original insurance policy, which included coverage for losses arising from the negligent installation of a fire protection system.

Having concluded that the original policy provided coverage for the faulty installation and that the endorsement effectively removed such coverage, the court then turned to the issue of whether an insurer is obligated to notify the insured of the reduction in coverage. Explaining that insurance contracts are contracts of adhesion between parties not equally situated, the

court held that when an insurer makes basic coverage changes, by way of either renewal or endorsement, it has an obligation to notify the insured in writing of the change of coverage. The court concluded that, to be fair to the insured, the insurer has an obligation to inform the insured of any limitation in coverage by sending a cover letter or by placing a conspicuous heading on the amendatory endorsement.

In applying this rule to the facts in Fire Watch, the court focused on what a reasonable insured in Fire Watch's position would have understood the endorsement to mean. Id. at 572. The court noted that the president of Fire Watch had several conversations with Canadian's agent in an attempt to understand the meaning and purpose of the endorsement. The president then signed the endorsement and attached a letter explaining his understanding of the endorsement. Canadian did not respond to the correspondence from Fire Watch, although it was clear from the letter and the manner in which the endorsement was accepted that the insured was confused about the way in which the endorsement would affect its insurance coverage. Therefore, the court held, Canadian's failure to explain in writing that the endorsement substantially reduced Fire Watch's insurance coverage rendered the reduction void, and Fire Watch was entitled to the coverage that it had under the original policy. Id. at 575.

Klimstra's case, in contrast, presents neither a renewal or endorsement situation, nor does it involve a reduction in coverage. First, Klimstra did not renew her Minnesota policy, nor was there an endorsement to her Minnesota policy. Instead, she purchased a new policy in Wisconsin. Granstrom informed Klimstra that they could not issue insurance in Wisconsin. Klimstra's Minnesota policy put her on notice that upon change of residence to another state, she would be issued a new policy. Even assuming, as Klimstra argues, that defendants in fact referred to the transaction as a "transfer," Klimstra did not effect a transfer of

her Minnesota policy.  Klimstra knew she was applying for a Wisconsin policy, with Wisconsin rates, through a Wisconsin agent, subject to the laws of Wisconsin.  She knew that Wisconsin law might require her to carry different coverages or accept different limits on coverage.  At the Smader Agency in Wisconsin, Klimstra filled out and signed an application for a Wisconsin insurance policy.

Second, the Wisconsin policy issued to Klimstra by State Farm did not reduce Klimstra's UM coverage.  In point of fact, the Wisconsin policy increased UM coverage to $100,000 from the $25,000 that Klimstra had under her Minnesota policy.  The difference in coverage with respect to miss-and-run accidents between the Minnesota policy and the Wisconsin policy resulted from the operation of state law and not from a reduction in coverage by State Farm.  We conclude that the rule of Fire Watch does not apply to invalidate the Wisconsin miss-and-run limitation.

Moreover, even if we were to assume that State Farm or Granstrom breached a duty owed to Klimstra by failing to give her notice that her Wisconsin policy did not contain miss-and-run coverage, Klimstra's claims under breach of contract or any negligence theory would fail for lack of causation.  See Nguyen v. Control Data Corp., 401 N.W.2d 101, 105 (Minn. Ct. App. 1987) (holding proof required to support contract damages is similar to that of tort; damages must result from or be caused by the breach); see also Melin v. Johnson, 387 N.W.2d 230, 233 (Minn. Ct. App. 1986) (holding that agent's failure to notify the insured was not the proximate cause of insured's inability to obtain coverage).  In Klimstra's case it is undisputed that miss-and-run coverage was not available in Wisconsin in 1991.  Even if Granstrom had told Klimstra to seek out such coverage in Wisconsin, Klimstra would not have been able to obtain miss-and-run coverage in Wisconsin because such coverage was not available in the Wisconsin market.  Indeed, Klimstra is now in the exact same position that she would have been

in if she had gone to any other insurer in Wisconsin and asked for miss-and-run coverage.  Therefore, any alleged breach of duty by State Farm and Granstrom in not explaining the differences in UM coverage laws between Minnesota and Wisconsin did not cause Klimstra's damages.[4]

## VI.

Finally, Klimstra asserts that she did not receive any consideration for the alleged UM reduction.  She contends that the physical-contact requirement therefore should be deleted from her Wisconsin policy.  This argument is without merit.  We already have held that the defendants did not "reduce" Klimstra's UM coverage.  When Klimstra moved to Wisconsin, she purchased a new Wisconsin policy, and her Minnesota policy terminated.  She paid for, and received, a policy that conformed with Wisconsin law.  Her failure-of-consideration argument simply has no basis in fact.

## VII.

Having considered all of Klimstra's arguments, we conclude that the District Court did not err in granting summary judgment for the defendants.  The judgment of the District Court is affirmed.

---

[4]We do not wish to be read as suggesting the existence of such a duty.  To the contrary, we are unaware of any authority for imposing a duty of this sort on insurers and their agents.  To find such a duty would mean that anytime an insured mentions that he may move to another state, the insurance agent then is obligated to advise the insured on all differences in state laws and coverages in all potential states to which the insured may move, even if the agent is not authorized to write insurance policies in those states.  We know of no state that has gone this far in imposing burdensome and unrealistic duties.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.